[No. B003771. Second Dist., Div. Four. May 23, 1985.]

LOS ANGELES COUNTY EMPLOYEES ASSOCIATION,
LOCAL 660 et al., Plaintiffs and Appellants, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

COUNSEL

Richard S. Levin for Plaintiff and Appellants.

De Witt W. Clinton, County Counsel, and Steve Houston, Deputy County Counsel, for Defendants and Respondents.

OPINION

WOODS, P. J.—Plaintiffs/appellants are unions appealing from a judgment which denied their petition to compel the County of Los Angeles (County) to implement certain health care insurance benefits which they claimed had been wrongfully denied to them.

The issues are (1) whether appellants exhausted their administrative remedies, and (2) whether the County improperly discriminated against nonsettling unions when it granted the insurance benefits only to those units which had otherwise completed negotiations.

As is required by the Government Code, the employees of the County are represented for the purpose of bargaining with the County by a number of unions—one union for each type of employee. Those unions are joined in a coalition for the purpose of conducting bargaining over issues common to all employees, leaving bargaining over such subjects as wages and similar terms of employment to negotiations between the County and the several unit unions individually. The result is that the coalition bargains over such matters as: (1) civil service rules; (2) mileage; (3) social security; and (4) "fringe benefits" covering retirement, health and dental insurance, holidays, and vacations. We are here concerned only with "fringe benefits" relating to health insurance.

Since the various agreements were to expire on June 30, 1983, bargaining began in the early spring of that year. Ultimately, a fringe benefits memorandum of understanding (MOU) was reached between the County's negotiating team and the coalition, covering, inter alia, the County's contribution to health insurance. However, the board of supervisors refused to approve that agreement unless and until each unit had reached an agreement over wages (or salaries). The board passed an ordinance, approving the health insurance increase as to those unions which had completed wage negotiations but not as to unions (here the appellants) which had not reached such agreements.

The contention of this lawsuit is that that partial approval of the health insurance agreement constituted a discrimination barred by the governing statutes. The trial court held that it did not; we disagree, and reverse.

The law against "discrimination" bars differences in treatment based on unlawful and unreasonable differences. Here, appellants seek to receive the same level of health care benefits that the County awarded to all other County employees. Both sides agree that the fringe benefits MOU which had been negotiated, and the cost of which was known, would simply be inserted into the employee benefits section of each unit's contract. It was therefore unreasonable for the board to deny the increases to nonsettling unions on the ground that the County did not know what the full cost of those unions' agreements would be.

I

The County's first contention is that appellants failed to exhaust their administrative remedies.

The record shows that the instant action was filed on August 4, 1983. On August 10, appellants filed an unfair practice charge with the County's employee relations commission. That commission's hearing was pending at the time the trial court denied plaintiffs the relief they sought.

"The requirement of exhaustion of administrative remedies does not apply if the remedy is inadequate. [Citations.]" (*Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 342 [124 Cal.Rptr. 513, 540 P.2d 609].) That exception applies here.

The immediacy of the situation is shown by the recommendation of the County's chief administrative officer which the board of supervisors adopted at its July 26, 1983 meeting. That letter states in pertinent part: "On July 1, 1983, the County and the Coalition of County Unions, AFL-CIO, reached tentative agreement on a successor Memorandum of Understanding regarding fringe benefits. The employee organizations have been advised that if tentative agreement is reached on both fringe benefit and individual unit issues, we will recommend implementation of those portions of the fringe benefit agreement that would have immediate impact on the employees they represent, and will submit to your board the complete memorandum of understanding when we have agreement with all affected units. We now have tentative agreement on all fringe benefit and individual issues with the units shown in attachment III.

"The tentative Fringe Benefit agreement provides that the County will contribute toward an approved health plan, the lesser of $188 or the cost of the premium per month for each eligible employee, an increase of $44.56 from the current maximum of $143.44 per month. *Since health insurance premiums for the new insurance contract year should be reflected in the August payroll*, it is necessary to implement the portion of the fringe benefit agreement relating to health insurance contributions at this time for those units with which we have settlement in order to meet our commitment." (Italics added.)

As members of units which had not settled would immediately be receiving less of a county contribution in their paychecks than members of units which had settled, the County's action had an immediate coercive impact on the nonsettling units. A speedy decision was necessary and not possible under the relatively elaborate factfinding procedures set forth in the com-

mission's rules and regulations. (See *Social Services Union* v. *County of San Diego* (1984) 158 Cal.App.3d 1126, 1131 [205 Cal.Rptr. 325].)

We therefore address the merits of the issues.

II

Government Code section 3506 provides: "Public agencies and employee organizations shall not interfere with, intimidate, restrain, coerce or discriminate against public employees because of their exercise of their rights under Section 3502."

Government Code section 3502 states: "Except as otherwise provided by the Legislature, public employees shall have the right to form, join, and participate in the activities of employee organizations of their own choosing for the purpose of representation on all matters of employer-employee relations. Public employees shall have the right to refuse to join or participate in the activities of employee organizations and shall have the right to represent themselves individually in their employment relations with the public agency."

Sections 3506 and 3502 are part of the Meyers-Milias-Brown Act. "With the enactment of the George Brown Act (Stats. 1961, ch. 1964) in 1961, California became one of the first states to recognize the right of government employees to organize collectively and to confer with management as to the terms and conditions of their employment. Proceeding beyond that act the Meyers-Milias-Brown Act (Stats. 1968, ch. 1390) authorized labor and management representatives not only to confer but to enter into written agreements for presentation to the governing body of a municipal government or other local agency." (*Glendale City Employees' Assn., Inc.* v. *City of Glendale, supra,* 15 Cal.3d at p. 331; see generally, Grodin, *Public Employee Bargaining in California: The Meyers-Milias-Brown Act in the Courts* (1972) 23 Hastings L.J. 719.)

It is the express purpose of the Act "to promote full communication between public employers and their employees by providing a reasonable method of resolving disputes regarding wages, hours, and other terms and conditions of employment between public employers and public employee organizations." (Gov. Code, § 3500.)

The record at bench contains some dispute over what past negotiating practices had been and how often during negotiations the topic arose of

linking the fringe benefit agreement to settlement of the individual unit agreements.

The tenor of appellants' argument and declarations is that they were surprised when the County announced in early negotiating sessions that the agreements would be linked. The declarations indicate appellants thought the County had dropped the subject as it was only raised once or twice and was immediately rejected.[1]

On the other hand, respondents' argument and declarations are that it had been the practice since the inception of bargaining in 1970 to link implementation of the fringe benefit agreement to total agreement at the individual unit negotiations. Respondents' negotiators further indicated that that position was repeated numerous times during negotiations.

In any event, respondents have conceded in their brief that "implementation in the past was as to all units at the same time." Thus, even if the past practice was to delay implementing the fringe benefit agreement until all the units had reached agreement, this case presented a break with the past, as units which had reached agreement received the benefit of certain provisions of the fringe benefit agreement which were denied at that time to the nonsettling units.

We are convinced that the difference in treatment constituted a violation of Government Code section 3506.

*Campbell Municipal Employees Assn.* v. *City of Campbell* (1982) 131 Cal.App.3d 416 [182 Cal.Rptr. 461], found a violation of section 3506 under facts with important similarities to those at bench.

In *Campbell,* an employee organization had reached impasse with the city's negotiating committee on two issues, neither of which was the retroactivity of negotiated increases. After the impasse procedures were unsuccessful, the matter was referred for decision to the city council. The council gave the organization which had utilized the impasse procedure a less favorable retroactivity date than all other employee organizations, to reward the organizations which had settled their disputes without utilizing the impasse procedure. The opinion by then-judge, now-Justice Grodin held that the less favorable retroactivity date constituted discrimination in violation of Government Code section 3506. (131 Cal.App.3d at pp. 422-425.)

---

[1]However, a declaration by the negotiator for the American Federation of State, County and Municipal Employees, AFL-CIO, admitted that the County raised the point four or five times, although the unions did not accept it.

Similarly here, County Supervisor Pete Schabarum stated in recommending immediate implementation of the health benefit increase for settling units: "I believe that this is an appropriate action to take for those employee groups which cooperate with us in reaching prompt agreement." In rewarding those groups, the County improperly discriminated against the groups which were still negotiating.

The County attempts to distinguish *Campbell* on the ground that there the city unilaterally changed the agreement after negotiations were completed, while here negotiations were continuing and impasse had not been declared. The distinction fails as negotiations on the fringe benefit agreement had been concluded as of July 1, 1983. It is clear that under Government Code section 3505.1,[2] the fringe benefit MOU was tentative and not binding until it was approved by the board of supervisors. (*Bagley* v. *City of Manhattan Beach* (1976) 18 Cal.3d 22, 25 [132 Cal.Rptr. 668, 553 P.2d 1140].) It is equally clear, from the record, that there was not intended to be, nor was there, any further negotiation on the fringe benefit package. Once the County set a date for implementation of the MOU benefit package as to some units, that same date had to apply for all the units. Since the past practice had been to give the same date to everyone, it constituted discrimination to unilaterally decide to implement the benefits only for units which had reached agreement.

We are further guided by *San Leandro Police Officers Assn.* v. *City of San Leandro* (1976) 55 Cal.App.3d 553, 558 [127 Cal.Rptr. 856]. There, the city had adopted a plan under which only those management employees who had not joined an employee organization were granted a monetary benefit as a "management incentive." The *San Leandro* opinion held that the city's action "interfered with and discriminated against a group of employees by reason of their decision to exercise their right to participate in employee organizations, thereby violating Government Code section 3506." (*Id.,* at p. 558.) The same is true here, where the County's action discriminated against that group of employees who belonged to units which were still bargaining.

*Social Services Union* v. *County of San Diego* (1984) 158 Cal.App.3d 1126 [205 Cal.Rptr. 325], further supports our conclusion. There, the memoranda of agreement effective through June of 1982 provided for paid hol-

---

[2]Government Code section 3505.1 states: "If agreement is reached by the representatives of the public agency and a recognized employee organization or recognized employee organizations, they shall jointly prepare a written memorandum of such understanding, *which shall not be binding,* and present it to the governing body or its statutory representative for determination." (Italics added.)

iday observances for Christmas and New Year's Day. No new agreement had been reached with certain employee organizations as of December 31, 1982. Other employee organizations had concluded memoranda for the 1982-1983 year which expressly provided for holiday benefits including Christmas Eve and New Year's Eve, which fell on Fridays that year. The County amended its salary ordinance so that employees who were not represented or who had already signed or would sign agreements before New Year's Eve could take their paid holidays on Christmas Eve and New Year's Eve.

The majority opinion in the *Social Services Union* case found it unnecessary to decide whether the ordinance was discriminatory. It held that the 1981-1982 memoranda providing for paid Christmas and New Year's holidays entitled the employees who had not reached new agreements to have their holidays on work days for payroll purposes and thus on the Eves. Justice Butler's concurring opinion did address the question of discrimination, stating: "[T]he county's enactment of the salary ordinance extending the olive branch of paid holidays to those organizations signing memoranda of agreement before December 24, 1982 is a classic exercise in coercive tactics intended to result in a loss of benefits to members of those employee entities who chose to fight rather than sing Christmas carols at the doors of members of the board of supervisors. A penalty is imposed upon those employees because their bargaining units had not come to terms with the county. This is a clear violation of Government Code section 3506." (*Social Services Union* v. *County of San Diego, supra,* 158 Cal.App.3d at p. 1132.) A further observation from *Social Services Union* is equally applicable here, Los Angeles County's conduct was destructive of the purpose and intent of the Meyers-Milias-Brown Act to prohibit public agencies in their relations with their employees from intimidation, coercion and discrimination.

The judgment is reversed.

Kingsley, J., and McClosky, J., concurred.

A petition for a rehearing was denied June 11, 1985, and respondents' petition for review by the Supreme Court was denied August 21, 1985.