[No. S162647. July 1, 2010.]

CITY OF SAN JOSE, Plaintiff and Appellant, v.
OPERATING ENGINEERS LOCAL UNION NO. 3 et al., Defendants and
Respondents.

## Counsel

Richard Doyle, City Attorney, George Rios, Assistant City Attorney, Robert Fabela and Suzanne Hutchins, Deputy City Attorneys, for Plaintiff and Appellant.

Jennifer B. Henning for California State Association of Counties and League of California Cities as Amici Curiae on behalf of Plaintiff and Appellant.

Michael Aguirre, City Attorney (San Diego), Alan Hersh, Chief Deputy City Attorney; Renne Sloan Holtzman Sakai, Jeffrey Sloan and Ivan Delventhal for City of San Diego as Amicus Curiae on behalf of Plaintiff and Appellant.

Ann Miller Ravel, County Counsel (Santa Clara), Nancy J. Clark, Assistant County Counsel, and Lori E. Pegg, Lead Deputy County Counsel, for County of Santa Clara as Amicus Curiae on behalf of Plaintiff and Appellant.

Leonard Carder, Arthur A. Krantz, Margot Rosenberg; Weinberg, Roger & Rosenfeld and Antonio Ruiz for Defendants and Respondents.

Altshuler, Berzon, Nussbaum, Rubin & Demain, Altshuler Berzon, Jonathan Weissglass and Linda Lye for California State Council of Service Employees as Amicus Curiae on behalf of Defendants and Respondents.

Priscilla S. Winslow and Joseph R. Colton for California Teachers Association as Amicus Curiae on behalf of Defendants and Respondents.

Michael R Clancy and Arnie R. Braafladt for California School Employees Association as Amicus Curiae on behalf of Defendants and Respondents.

Robert Thompson, Robin Wesley, Carolyn Kubish and Tammy Samsel for Public Employment Relations Board as Amicus Curiae on behalf of Defendants and Respondents.

Mary Maloney Roberts, William L. Kasley and Rebecca M. Ceniceros for Administrative Office of the Courts as Amicus Curiae.

OPINION

KENNARD, J.—In California, labor relations between most local public entities and their employees are governed by the Meyers-Milias-Brown Act (MMBA) (Gov. Code, § 3500 et seq.), which recognizes the right of public employees to bargain collectively with their employers over wages and other terms of employment. The administrative agency authorized to adjudicate unfair labor practice charges under the MMBA is California's Public Employment Relations Board (PERB). Subject to certain exceptions, local public agencies and their employees must exhaust their administrative remedies under the MMBA by applying to PERB for relief before they can ask a court to intervene in a labor dispute.

California allows public employees to go on strike to enforce their collective bargaining demands unless the striking employees perform jobs that are essential to public welfare. But whether a particular employee's job is so essential that the employee may not legally strike is a complex and fact-intensive matter, and one on which public employee organizations and public entities may disagree.

Here, we address this issue: If a public entity is of the view that a threatened strike by its employees will be unlawful because a strike by some or all of the employees creates a substantial and imminent threat to public health and safety, must the public entity first file an unfair labor practice complaint with PERB and await PERB's adjudication of the complaint before asking a court for an injunction prohibiting the strike?

We agree with the Court of Appeal that PERB has initial jurisdiction over a claim by a public entity that a strike by some or all of its employees is illegal. In addition, we conclude that a public entity must exhaust its administrative remedies before PERB before seeking judicial relief *unless* one of the recognized exceptions to the exhaustion of administrative remedies requirement is established.

I

In January 2006, plaintiff City of San Jose (City) and defendant Operating Engineers Local Union No. 3 (Union), which represented some 808 full-time

employees of the City, started negotiating a new labor contract. The old contract was to expire on April 14, 2006. The parties agreed that if their negotiations reached an impasse, the Union would give the City 72 hours' notice before engaging in any work stoppages. The Union did so on May 30, 2006, when it notified the City that work stoppages could occur anytime after June 2. The City responded that it would by June 2 seek a court order prohibiting any strike or work stoppage by Union members performing services essential to public health and safety.

On May 31, 2006, the Union filed with PERB an unfair labor practice charge against the City. The Union alleged that the City's threatened court action interfered with the Union's right to represent its members, interfered with the rights of its members to participate in activities of an employee organization, and breached the City's obligation to meet and confer with the Union in good faith.

On June 1, 2006, the City filed a complaint in the superior court seeking to enjoin 110 employees (identified by name and employment position) from engaging in any work stoppage, as such action would endanger public health and safety. Specifically, the complaint alleged that such work stoppage would: (1) disrupt the City's environmental service department's operation and maintenance of the San Jose/Santa Clara Water Pollution Control Plant, which treats waste and sewage water of some 1.3 million people before discharge into San Francisco Bay; (2) impair the ability of the City's department of transportation to maintain and repair traffic signals and street-light poles; and (3) impair the ability of the City's general services department to adequately service facilities that support communications among emergency personnel, such as the police and fire departments.

The Union opposed the City's request for injunctive relief, as did PERB. In denying relief, the superior court pointed to the City's failure to exhaust administrative remedies by not first seeking relief from PERB, which the court ruled had exclusive initial jurisdiction over the matter.

The City filed a notice of appeal, and it petitioned the Court of Appeal for a writ of supersedeas. That court issued a stay prohibiting a strike by the 59 employees identified in the City's petition.[1]

When the Court of Appeal learned that the parties had in November 2006 ratified a labor agreement, it deemed the appeal to be moot but, at the urging of both parties, nevertheless addressed the issues presented because of their

---

[1] The record before us contains no explanation why, after identifying in the trial court 110 employees whose services were alleged to be essential to public health and safety, the City's writ petition in the Court of Appeal put the number of such employees at 59.

statewide importance. Agreeing with the trial court, the Court of Appeal concluded that PERB "has exclusive initial jurisdiction to determine whether particular public employees covered by the MMBA have the right to strike in cases that implicate the MMBA." We granted the City's petition for review.[2]

## II

When a public employer is of the view that a threatened strike by certain public employees will endanger the public welfare, must it generally first seek relief from PERB before asking a superior court for injunctive relief? Our answer is "yes." This is why: The Legislature has expressly vested in PERB initial jurisdiction over claims of unfair labor practices arising under the MMBA. (Gov. Code, § 3509.) Because a public entity's claim that a threatened public employee strike is illegal generally constitutes an unfair labor practice claim, the claim comes within PERB's initial jurisdiction. We begin our analysis by reviewing the history of local public employment labor law in California, particularly as it has affected PERB's jurisdiction and the right of public employees to strike.

### A.   PERB Jurisdiction and Public Employee Strikes

In 1961, the Legislature enacted the George Brown Act (Stats. 1961, ch. 1964, § 1, pp. 4141–4143, adding Gov. Code, § 3500 et seq.), which granted public employees in California the right to organize and have their representatives "meet and confer" with their employers over wages and working conditions (Gov. Code, former § 3505). That right was expanded in 1968, when the Legislature enacted the MMBA (Gov. Code, §§ 3500–3510) authorizing public entities and labor representatives not only to confer but also to reach binding agreements on wages, hours, and working conditions. (Gov. Code, § 3505; *Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1083 [29 Cal.Rptr.3d 234, 112 P.3d 623] (*Coachella Valley*).) At that time, PERB had not yet been created.

The history of PERB begins in 1975, when the Legislature enacted the Educational Employment Relations Act (EERA) (Gov. Code, §§ 3540–3549.3). That law established the Educational Employment Relations Board (EERB), which in 1977 was renamed the Public

---

[2] In the Court of Appeal, PERB filed a friend-of-the-court brief in support of the Union. But it did not do so in this court. In response to our invitation to file a friend-of-the-court brief, PERB stated that it would not do so for "reasons that include diminished resources" and because of its preference to maintain "a neutral role in the current litigation."

Employment Relations Board. (*Coachella Valley, supra*, 35 Cal.4th at p. 1085.) As an administrative agency, PERB was to adjudicate unfair labor practice charges under the EERA, and its jurisdiction was set forth in Government Code section 3541.5. That statute provided, and still provides, in part: "The initial determination as to whether the charges of unfair practices are justified, and, if so, what remedy is necessary to effectuate the purposes of this chapter, shall be a matter within the *exclusive jurisdiction* of the board." (Italics added.)

We discussed Government Code section 3541.5 first in *San Diego Teachers Assn. v. Superior Court* (1979) 24 Cal.3d 1 [154 Cal.Rptr. 893, 593 P.2d 838] (*San Diego Teachers*) and later in *El Rancho Unified School Dist. v. National Education Assn.* (1983) 33 Cal.3d 946 [192 Cal.Rptr. 123, 663 P.2d 893] (*El Rancho*). In each case, we held that PERB had exclusive initial jurisdiction over public employee strikes, as explained below.

In *San Diego Teachers, supra*, 24 Cal.3d 1, unfair labor practice charges were pending before PERB when a superior court enjoined a teacher's association from striking and further held the association and its president in contempt for violating the injunction. We annulled the contempt orders "on the ground that PERB had exclusive initial jurisdiction to determine whether the strike was an unfair practice . . . ." (*Id.* at p. 14.)

■ In *El Rancho, supra*, 33 Cal.3d 946, this court held that the statutory grant to PERB of exclusive initial jurisdiction over unfair labor practice charges under the EERA divested the superior courts of jurisdiction over a school district's complaint for damages arising from a teachers' strike. (*El Rancho*, at p. 961.) We noted that some four years earlier this court in *San Diego Teachers, supra*, 24 Cal.3d at page 12, had "embraced the preemption doctrine developed by the federal courts under the National Labor Relations Act (29 U.S.C. § 151 et seq. [NLRA])," and "that the principles defining the preemptive reach of the NLRA are generally applicable in determining the scope of PERB's preemptive jurisdiction under EERA." (*El Rancho, supra*, 33 Cal.3d at p. 953.) Accordingly, citing *San Diego Unions v. Garmon* (1959) 359 U.S. 236, 244–245 [3 L.Ed.2d 775, 79 S.Ct. 773], we applied to PERB the same rule of jurisdiction that the United States Supreme Court had adopted with respect to the National Labor Relations Board. Under that rule, the administrative agency "is held to have exclusive jurisdiction over activities arguably protected or prohibited by" the governing labor law statutes. (*El Rancho, supra*, at p. 953.)

■ Neither *San Diego Teachers, supra*, 24 Cal.3d 1, nor *El Rancho, supra*, 33 Cal.3d 946, addressed whether public employees have a legal right to strike. And both the EERA and the MMBA are silent on this subject.

But in 1985 we did take up that question in *County Sanitation Dist. No. 2 v. Los Angeles County Employees' Assn.* (1985) 38 Cal.3d 564 [214 Cal.Rptr. 424, 699 P.2d 835] (*County Sanitation*). There we held: "[S]trikes by public employees are not unlawful at common law unless or until it is clearly demonstrated that such a strike creates a substantial and imminent threat to the health or safety of the public. This standard allows exceptions in certain essential areas of public employment (e.g., the prohibition against firefighters and law enforcement personnel) and also requires the courts to determine on a case-by-case basis whether the public interest overrides the basic right to strike." (*Id.* at p. 586.) Thus, *County Sanitation* vested the courts with jurisdiction to decide whether to allow or to prohibit a particular public employee strike.

In 2000, the Legislature extended PERB's jurisdiction to cover matters arising under the MMBA—this was done through enactment of Government Code section 3509, which became effective July 1, 2001. (Stats. 2000, ch. 901, § 8.) Subdivision (b) of that statute provides in relevant part: "A complaint alleging any violation of [the MMBA] . . . shall be processed as an unfair practice charge by [PERB]. *The initial determination as to whether the charge of unfair practice is justified* and, if so, the appropriate remedy necessary to effectuate the purposes of this chapter, shall be a matter within the *exclusive jurisdiction* of [PERB]." (Italics added.) This enactment removed "from the courts their initial jurisdiction over MMBA unfair practice charges" (*Coachella Valley, supra,* 35 Cal.4th at p. 1089) and vested such jurisdiction in PERB (*id.* at p. 1077). Does this enactment also vest PERB with exclusive initial jurisdiction over public employee strikes that may involve claims of unfair labor practices under the MMBA? Our answer is "yes," as explained below.

### B. *Initial Jurisdiction over Public Employee Strikes*

■    The City contends that because the right of public employees to strike is founded in the common law, the statute vesting initial jurisdiction in PERB for claims of unfair practices arising under the MMBA (Gov. Code, § 3509, subd. (b)) is inapplicable to public employee strikes. We disagree. As we will explain, to accept the City's argument would be at odds with the body of public employment labor law as it has developed in California.

The language in Government Code section 3509, subdivision (b), which is part of the MMBA, is virtually identical to the language in Government Code

section 3541.5, which is part of the EERA.[3] Both statutory provisions expressly vest in the administrative board exclusive initial jurisdiction over unfair labor practice charges. And with respect to the MMBA, in section 3541.5, this court in *San Diego Teachers*, *supra*, 24 Cal.3d at pages 12–14, held this provision vests in PERB "exclusive initial jurisdiction" to decide whether a strike is an unfair practice and, if so, to determine the appropriate remedy.

■ Because of the similar language in these two jurisdictional statutes, and because of the legal presumption that the Legislature is deemed to be aware of existing judicial decisions that have a direct bearing on the particular legislation enacted (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1155–1156 [278 Cal.Rptr. 614, 805 P.2d 873]; *People v. Overstreet* (1986) 42 Cal.3d 891, 897 [231 Cal.Rptr. 213, 726 P.2d 1288]; *Estate of McDill* (1975) 14 Cal.3d 831, 837 [122 Cal.Rptr. 754, 537 P.2d 874]), we conclude that when in 2000 the Legislature transferred jurisdiction over the MMBA from the courts to PERB it did so in light of this court's existing case law. Those court decisions established: Public employees have a right to strike *unless* it is clearly shown that there is a substantial and imminent threat to public health and safety (*County Sanitation*, *supra*, 38 Cal.3d at p. 586); PERB has exclusive initial jurisdiction over activities "arguably protected or prohibited" by public employment labor law (*El Rancho*, *supra*, 33 Cal.3d at p. 953; see *San Diego Teachers*, *supra*, 24 Cal.3d at p. 12); and PERB's exclusive initial jurisdiction extends to remedies for strikes considered to be unfair labor practices (*San Diego Teachers*, *supra*, at pp. 12, 14).

The City insists, however, that this body of decisional law is inapplicable in this case, which arises under the MMBA, because no provision of the MMBA either "arguably protect[s] or prohibit[s]" (*El Rancho*, *supra*, 33 Cal.3d at p. 953) threatened strikes by employees whose services are essential to public health and safety. The City's argument runs counter to this court's decisions in *San Diego Teachers*, *supra*, 24 Cal.3d 1, and in *El Rancho*, *supra*,

---

[3] Government Code section 3541.5, which appears in the EERA, states in relevant part: "The initial determination as to whether the charges of unfair practices are justified, and, if so, what remedy is necessary to effectuate the purposes of this chapter, shall be a matter within the *exclusive jurisdiction* of the board." (Italics added.)

Government Code section 3509, subdivision (b), which the Legislature added to the MMBA after this court's decision in *County Sanitation*, *supra*, 38 Cal.3d 564, recognizing the right of public employees to strike, states in pertinent part, as noted above: "The initial determination as to whether the charge of unfair practice is justified and, if so, the appropriate remedy necessary to effectuate the purposes of this chapter, shall be a matter within the *exclusive jurisdiction* of the board." (Italics added.)

33 Cal.3d 946. Both were decided *before* the right of public employees to strike was established in this court's decision in *County Sanitation, supra,* 38 Cal.3d 564, and both involved the EERA, a statutory scheme that like the MMBA generally prohibits unfair labor practices but does not expressly either protect or prohibit public employee strikes. In *San Diego Teachers,* this court invalidated contempt orders arising out of an injunction against a strike by a teachers' association; we did so on the ground that PERB had exclusive initial jurisdiction over the matter. (24 Cal.3d at p. 14.) And in *El Rancho,* this court held that a complaint for damages arising out of a strike by a teachers' union was within PERB's exclusive initial jurisdiction over unfair labor practice charges. (33 Cal.3d at p. 960.) The holdings in those two cases would have been precluded if, as the City here contends, express statutory protection or prohibition of public employee strikes is a requirement of PERB's jurisdiction over those strikes.

The City notes that under the "arguably protected or prohibited" principle (*El Rancho, supra,* 33 Cal.3d at p. 953), "all claims in which a strike is involved may hypothetically implicate some provision of the MMBA . . . enough to invoke PERB's jurisdiction." As the Court of Appeal observed, however, PERB's jurisdiction extends only to complaints about practices governed by the Government Code's MMBA. (Gov. Code, § 3509, subd. (b).)

The City contends that regardless of whether a public employee strike falls within the "arguably protected or prohibited" principle (*El Rancho, supra,* 33 Cal.3d at p. 953), an action that, as in this case, seeks injunctive relief against a public employee strike as to those public employees providing services essential to the public welfare is outside PERB's purview under the "local concern" doctrine. That doctrine was developed by the United States Supreme Court. In *Sears, Roebuck & Co. v. Carpenters* (1978) 436 U.S. 180 [56 L.Ed.2d 209, 98 S.Ct. 1745], for example, the high court held that the National Labor Relations Board's authority did not preempt state court jurisdiction over an action by an employer for an injunction against a union picketing on the employer's property even though the picketing was arguably protected conduct under the federal labor law. This was so, said the court, because the conduct touched interests " 'deeply rooted in local feeling and responsibility' " (*id.* at p. 195), and because the assertion of state jurisdiction did not create a significant risk of prohibiting protected conduct (*id.* at p. 207). The doctrine has been applied in California in cases determining PERB's jurisdiction under the EERA. (*Pittsburg Unified School Dist. v. California School Employees Assn.* (1985) 166 Cal.App.3d 875, 884–886 [213 Cal.Rptr. 34].) The City argues that because the subject of public health and safety has historically been a matter of local responsibility (*People v. Union*

*Pacific Railroad Co.* (2006) 141 Cal.App.4th 1228, 1247 [47 Cal.Rptr.3d 92]; see *Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1149 [45 Cal.Rptr.3d 21, 136 P.3d 821]), the local concern doctrine should be applied in cases that, as here, involve strikes by public employees whose services are essential to public welfare, vesting in the courts exclusive jurisdiction over such cases.

■ The City's argument overstates the reach of the local concern doctrine. The doctrine applies primarily when the subject of the action is peripheral to the labor dispute (*Service by Medallion, Inc. v. Clorox Co.* (1996) 44 Cal.App.4th 1807, 1815 [52 Cal.Rptr.2d 650]), or when a judicial decision does not present a substantial danger of interfering with labor decisions of an administrative agency (*Kaplan's Fruit & Produce Co. v. Superior Court* (1979) 26 Cal.3d 60, 74–75 [160 Cal.Rptr. 745, 603 P.2d 1341]). The local concern doctrine has generally been applied in cases where it was necessary to "maintain[] civil order by deterring and punishing violence and other intentional torts, including defamation, trespass, and infliction of emotional distress." (2 Higgins, The Developing Labor Law (5th ed. 2006) pp. 2334–2335.) Here, there was no evidence that a strike by the City's public employees posed an immediate threat to civil order. At issue here is the legality of a public employee strike—an issue that goes to the essence of labor law. (*Fresno Unified School Dist. v. National Education Assn.* (1981) 125 Cal.App.3d 259, 268 [177 Cal.Rptr. 888]; see *County Sanitation, supra,* 38 Cal.3d at p. 588.) Therefore, we reject the City's contention that the local concern doctrine should be applied to defeat PERB's jurisdiction in *all* public employee strike cases arising under the MMBA.

■ To summarize, a claim by a public entity that a proposed strike by public employees includes employees who perform services essential to the public welfare is generally subject to PERB's initial jurisdiction. We next discuss whether a public entity may nevertheless bypass that administrative forum by applying to a court for relief if it can establish a recognized exception to the doctrine of exhaustion of administrative remedies.

### III

The Union contends that the doctrine of exhaustion of administrative remedies *always* applies in actions pertaining to public employee strikes that give rise to claims of unfair labor practices under the MMBA, and that therefore the doctrine's exceptions are never applicable to such strikes. The City, on the other hand, argues that the exhaustion doctrine *never* applies to

public employee strikes because any remedy by PERB cannot be effective when a threatened public employee strike includes employees whose services are essential to the public welfare. Neither party is right. As we will explain, whether a public entity must await PERB's adjudication of an unfair labor practice complaint before seeking judicial relief depends upon the facts of each case.

■ When remedies before an administrative forum are available, a party must in general exhaust them before seeking judicial relief. (*Coachella Valley*, *supra*, 35 Cal.4th at p. 1080.) Exhaustion requires "a full presentation to the administrative agency upon all issues of the case and at all prescribed stages of the administrative proceedings." (*Bleeck v. State Board of Optometry* (1971) 18 Cal.App.3d 415, 432 [95 Cal.Rptr. 860].) " 'The exhaustion doctrine is principally grounded on concerns favoring administrative autonomy (i.e., courts should not interfere with an agency determination until the agency has reached a final decision) and judicial efficiency (i.e., overworked courts should decline to intervene in an administrative dispute unless absolutely necessary).' " (*Coachella Valley*, *supra*, 35 Cal.4th at p. 1080.)

The exhaustion doctrine has certain exceptions. (*Coachella Valley*, *supra*, 35 Cal.4th at p. 1080.) The doctrine does not apply when the administrative remedy is inadequate. (*Glendale City Employees' Assn., Inc. v. City of Glendale* (1975) 15 Cal.3d 328, 342 [124 Cal.Rptr. 513, 540 P.2d 609].) For example, it does not apply when the administrative procedure is too slow to be effective (*Los Angeles County Employees Assn. v. County of Los Angeles* (1985) 168 Cal.App.3d 683, 686 [214 Cal.Rptr. 350]), or when irreparable harm would result by requiring exhaustion of administrative remedies before seeking judicial relief (*Department of Personnel Administration v. Superior Court* (1992) 5 Cal.App.4th 155, 169 [6 Cal.Rptr.2d 714]; 3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 342, p. 448; see *Sail'er Inn, Inc. v. Kirby* (1971) 5 Cal.3d 1, 7 [95 Cal.Rptr. 329, 485 P.2d 529]), or when it is clear that seeking administrative remedies would be futile (*Coachella Valley*, *supra*, 35 Cal.4th at p. 1080).

The Union contends that the doctrine of exhaustion of administrative remedies always applies to public employee strikes arising under the MMBA because of the adequacy of PERB's administrative remedies. It relies on this court's statement in *San Diego Teachers*, *supra*, 24 Cal.3d at page 10, that to "provide an adequate alternative to a party's own lawsuit for an injunction, PERB's power to apply [to the courts] for injunctive relief should be exercisable in response to any aggrieved party's request, not simply on its own motion." The Union's reliance is misplaced. The statement in question is devoid of any suggestion that PERB's remedies are *always* adequate.

Likewise unconvincing is the Union's argument that if a matter is subject to PERB's initial jurisdiction, the proceedings before that board must be finalized before there can be jurisdiction in the courts.[4] In support, the Union relies on *Fresno Unified School Dist. v. National Education Assn., supra*, 125 Cal.App.3d at page 271. Contrary to the Union's assertion, the Court of Appeal in that case did not hold that the existence of PERB's initial jurisdiction over unfair labor practice charges nullified the jurisdiction of the courts. Rather, it simply held that the conflict there in issue between PERB's jurisdiction and the court's jurisdiction could be resolved by having the superior court stay the judicial proceeding, leaving it to the court's "discretion as to how long the judicial proceedings should be stayed" while proceedings before PERB were pending. (*Id.* at p. 274.)

The Union also relies on this court's statement in *San Diego Teachers*, *supra*, 24 Cal.3d at page 11, that there is no "disparity between public and PERB interests" in arguing here that the PERB remedy is always adequate. According to the Union, by making the statement in question this court recognized that the PERB remedy is always adequate because PERB serves the same general public interest as a court. The statement, however, was made in the limited context of whether PERB could adequately minimize interruptions of educational services and therefore it does not assist the Union's argument here.

Contrary to the Union's assertion, there is no legal obstacle to applying the exceptions to the doctrine of exhaustion of administrative remedies to matters that are within PERB's initial jurisdiction.

We now consider the City's contention that the PERB remedy can never be effective when a proposed strike by public employees includes employees whose services may be essential to protect the public welfare.

■ We begin with a brief review of the statutory source establishing PERB's authority over requests for injunctions in unfair labor practice charges arising under the MMBA, and the regulations implementing that authority. Government Code section 3509, subdivision (a), incorporates into the MMBA the powers and duties of PERB set forth in section 3541.3.

---

[4] Subdivisions (a) and (b) of Government Code section 3509.5 provide that a party aggrieved by a final decision or order of PERB in an unfair practice matter—except for a decision not to issue a complaint—may seek writ relief in the Court of Appeal. When the writ petition is filed timely, the Court of Appeal has jurisdiction to grant "any temporary relief or restraining order" (Gov. Code, § 3509.5, subd. (b)) and to enforce, modify, or set aside PERB's decision or order. Although this statute authorizes judicial review of PERB's final decisions or orders, it does not address the issue confronted here. The question here is whether a court is without jurisdiction or authority to act when PERB has not yet issued a final order or decision but there is a potential substantial and imminent threat of harm to the public welfare.

Subdivision (j) of section 3541.3 says, in pertinent part: "Upon issuance of a complaint charging that any person has engaged in or is engaging in an unfair practice, the board may petition the court for appropriate temporary relief or restraining order." To implement this statutory authority, PERB has adopted regulations setting forth its procedures when injunctive relief has been requested. (Cal. Code Regs., tit. 8, §§ 32450–32470.)

Under those regulations, a party may, after giving the opposing party 24 hours' notice, file a request with PERB's general counsel to have PERB apply to the court for injunctive relief. (Cal. Code Regs., tit. 8, § 32450, subds. (a), (c).) The general counsel then initiates an investigation (*id.*, § 32455), after which "the General Counsel shall make a recommendation to [PERB] within 120 hours after the receipt of a request, unless the request is made during a work stoppage or lockout, in which case the General Counsel shall make a recommendation to [PERB] within 24 hours after the request is received" (*id.*, § 32460). PERB then decides whether to seek injunctive relief in court. (*Id.*, § 32465.) If PERB is unable to act within 24 hours of receiving the general counsel's recommendation, the general counsel is authorized to apply to the court for an injunction if the general counsel has "reasonable cause to believe that such action is in accordance with [PERB] policy and that legal grounds for injunctive relief are present." (*Id.*, § 32470.)

The City is wrong in asserting that in a case such as this the PERB remedy can never be adequate because PERB's regulations prevent it from acting with sufficient speed to prevent the proposed public employee strike from leading to irreparable harm to the public welfare. As noted above, the minimum time for PERB to seek injunctive relief from a court is 24 hours. (Cal. Code Regs., tit. 8, § 32450, subds. (a), (c).) In this case the Union agreed to give, and did give, the City at least 72 hours' notice of the possibility of a strike. Thus, even if we assume that injunctive relief was appropriate here, there was sufficient time for the City to have asked PERB for injunctive relief and sufficient time for PERB to have decided whether to apply for such relief in court.

**IV**

Whenever possible, labor disputes asserting unfair labor practices under the MMBA should be submitted first to PERB rather than a court. If an exception to the doctrine of exhaustion of administrative remedies is claimed, the trial court should afford due deference to PERB and issue injunctive relief only when it is clearly shown that PERB's remedy would be inadequate.

Here, as noted above, while the matter was pending in the Court of Appeal the parties were able to resolve their dispute and ratify a labor agreement. At the urging of the parties, however, the Court of Appeal went ahead and decided the merits of the issues because of their statewide importance.

We affirm the judgment of the Court of Appeal.

George, C. J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.