Filed 6/4/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| ROBERT FREENY et al.,<br><br>    Plaintiff s and Appellants,<br><br>v.<br><br>CITY OF SAN BUENAVENTURA et al,<br><br>    Defendants and Respondents. | 2d Civil No. B240893<br>(Case No. 56-2011-00403267-<br>CU-WM-VTA)<br>(Ventura County) |

         The California Tort Claims Act (Act) confers immunity from tort liability on public employees when they make "basic policy decisions" in a legislative capacity.  (Gov. Code, §§ 820.2, 821, 821.2.)[1]  We hold that public employees' tort immunity for legislative decision-making applies even when that decision-making is also alleged to involve the making of misrepresentations motivated by "actual fraud, corruption or actual malice."  (§ 822.2)  For this reason and others, we affirm the dismissal of plaintiffs' suit against a city and five city council members for nearly $2 million in compensatory damages, plus punitive damages, for voting against an application for building permits and variances.

---

         [1] All statutory references are to the Government Code unless otherwise indicated.

*FACTS AND PROCEDURAL HISTORY*

We draw these facts from the allegations in the complaint, which we accept as true except where contradicted by the exhibits attached to the complaint. (*Tucker v. Pacific Bell Mobile Servs.* (2012) 208 Cal.App.4th 201, 210.)

### I. *Administrative Review*

Plaintiffs Robert and Linda Freeny (plaintiffs) own two adjacent parcels of land in mid-town City of San Buenaventura (City). For three years, they worked with their own architect and consulted with the City's staff to design a living facility for senior citizens. The City's planning commission (Planning Commission) eventually approved a 44-unit, 42,172-square foot facility (the Project), and concomitantly granted a conditional use permit, a design review, an administrative variance, and a lot-line adjustment.

A group of 35 persons living near the proposed facility appealed the Planning Commission's decision to the City Council. Following a remand to the Planning Commission for further fact-finding, the City Council took up the matter at a public hearing. On a five-to-two-vote, the City Council approved the neighbors' appeal and overturned the Planning Commission's approval. In so doing, the City Council found that building a facility of that "size" on a "street-to-street lot" was "incompatible" with the "existing residential neighborhood." The City Council stated that plaintiffs "need[ed] to rethink the entirety of the project," but that its denial was "without prejudice" and invited plaintiffs to submit a "redesign[ed]" project. The City Council subsequently adopted a formal resolution sustaining the appeal "without prejudice."

### II. *Plaintiffs' Complaint*

Plaintiffs sued the City and five City Council members (collectively, defendants) who voted to reject the Project.[2] The complaint includes a petition for

---

[2] Plaintiffs also sued two neighbors who oppose the Project, but the trial court struck plaintiffs' claims against the neighbors under the anti-SLAPP law. Plaintiffs do not appeal that ruling.

2

administrative mandamus seeking an order (1) commanding the City to approve the Project or (2) requiring a new hearing before the City Council. The complaint also prays for $1.8 million in compensatory damages and additional punitive damages arising from tort claims for fraud, misrepresentation and, because plaintiffs are in their 70s, elder abuse.

### III. *The Trial Court's Ruling*

The trial court sustained defendants' demurrers without leave to amend on two grounds. First, the court concluded that plaintiffs' lawsuit was not ripe because the City's denial "without prejudice" left administrative remedies unexhausted. The court rejected plaintiffs' arguments that further exhaustion was futile or would irreparably injure plaintiffs. Second, the court ruled that defendants were immune from liability for adopting laws under sections 818.2 and 821; for denying permits or similar authorizations under sections 818.4 and 821.2; and for exercising their discretion under section 820.2. The court concluded that this immunity applied "irrespective of the specific causes of action" plaintiffs alleged.

### *DISCUSSION*

We independently review the trial court's sustaining of a demurrer. (*San Mateo Union High Sch. Dist. v. County of San Mateo* (2013) 213 Cal.App.4th 418, 425 (*San Mateo*).) In so doing, we accept the complaint's allegations as true and construe them liberally to attain substantial justice among the parties. (*Ibid.*) We review the trial court's decision not to grant leave to amend for an abuse of discretion. (*Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1091 (*Reynolds*), abrogated on other grounds in *Martinez v. Combs* (2010) 49 Cal.4th 35, 62-66.) On appeal, plaintiffs bear the burden of establishing error. (*San Mateo*, *supra*, at p. 426.)

### I. *Exhaustion of Administrative Remedies*

When an administrative forum exists for presenting claims, a party is usually required to present claims in that forum before "resorting to the courts . . . ." (*Coachella Valley Mosquito Vector Control Dist. v. California PERB* (2005) 35

3

Cal.4th 1072, 1080.) "Exhaustion requires 'a full presentation to the administrative agency upon all issues of the case and at all prescribed stages of the administrative proceedings.'" (*City of San Jose v. Operating Engineers Local Union No. 3* (2010) 49 Cal.4th 597, 609, quoting *Bleeck v. State Bd. of Optometry* (1971) 18 Cal.App.3d 415, 432.)

This is not a case where the would-be litigant skipped the administrative procedures entirely. To the contrary, plaintiffs presented their application for building permits and variances to the Planning Commission and the City Council. Plaintiffs also obtained a definitive ruling rejecting their application as to the 42,172-square foot project that underlies this lawsuit.

Defendants contend that this was still not enough. Defendants note that the City Council's rejection was "without prejudice," and argue that plaintiffs have yet to avail themselves of their right under the City's municipal code (SBMC) to file a new application with the Planning Commission. (See SBMC § 24.565.050(H).) Because the City Council advised plaintiffs that they would "need" to "rethink" and "redesign" "the entirety of the project" before submitting a new application, the question presented is whether the duty to exhaust administrative remedies requires plaintiffs to reexhaust their remedies by vetting an entirely different project through the same administrative process even though the project they seek to challenge judicially has already been definitively rejected through that process. We review this question de novo. (*Sierra Club v. City of Orange* (2008) 163 Cal.App.4th 523, 536.)

Whether reexhaustion with an entirely different project is required depends on the nature of the subsequent judicial challenge. If a plaintiff is claiming that a government entity has effected a regulatory taking by "'. . . deny[ing] [her] *all* economically beneficial or productive use . . .'" of her property, denial of a single use or project may not be sufficient. (*Landgate, Inc. v. California Coastal Com.* (1998) 17 Cal.4th 1006, 1017, citing *Lucas v. South Carolina Coastal Council* (1992) 505 U.S. 1003, 1015, italics added.) Presentation and rejection of other

4

uses—that is, reexhaustion—may also be necessary to establish that *the property has no use.* (See *Dunn v. County of Santa Barbara* (2006) 135 Cal.App.4th 1281, 1299-1301; *Del Monte Dunes v. City of Monterey* (9th Cir. 1990) 920 F.2d 1496, 1501.)

However, when all a plaintiff challenges is the denial of a specific use through denial of a special project, the plaintiff need only show that the administrative agency has finally ruled on that project. Requiring reexhaustion in these circumstances would pervert the exhaustion requirement. No longer would exhaustion be a means of allowing administrative agencies the opportunity to apply their expertise and flesh out facts. (*Williams v. Housing Auth. of Los Angeles* (2004) 121 Cal.App.4th 708, 722.) Instead, exhaustion would become a tool for forestalling judicial review indefinitely by leaving the door open for further applications.

Because plaintiffs are not raising a regulatory takings claim and are challenging only the denial of the Project, the City Council's unequivocal rejection of the Project satisfies the exhaustion requirement.

## II. *Immunity From Tort Damages*

Plaintiffs contest the trial court's ruling that defendants are immune from liability for tort damages under the Act. (§ 810 et seq.) We independently review the trial court's construction and application of the Act. (*Coito v. Super. Ct.* (2012) 54 Cal.4th 480, 488 [statutory construction]; *Alvarez v. State of Calif.* (1999) 79 Cal.App.4th 720, 728 [application], abrogated on other grounds in *Cornette v. Dept. of Transportation* (2001) 26 Cal4th 63, 74, fn. 3.)

### A. *City Council Defendants*

When it comes to tort suits against public employees, "'the rule is liability, immunity is the exception.' [Citation.]" (*Ramos v. County of Madera* (1971) 4 Cal.3d 685, 692, limited on other grounds by *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 978, fn. 8 (*Caldwell*); see also § 820, subd. (a) ["Except as otherwise provided by statute . . ., a public employee is liable for injury caused by

5

his act or omission to the same extent as a private person"].) However, the Act declares that "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of discretion vested in him, whether or not such discretion be abused." (§ 820.2.) At the core of this immunity are "'"basic policy decisions."'" (*Ogborn v. City of Lancaster* (2002) 101 Cal.App.4th 448, 460.) Dovetailing neatly with this overarching immunity for discretionary policy making, the Act also confers immunity upon public employees for "fail[ing] to adopt an enactment" (§ 821); and for "deny[ing]" or "refus[ing] to issue" "permit[s]" and "approval[s]" (§ 821.2). The City Council defendants in this case are accordingly immune from tort damages under the Act. They are "public employees" (§ 811.4), and they are being sued for their discretionary legislative decision not to grant plaintiffs' application for building permits and variances (see *Ogborn*, *supra*, at p. 462).

Plaintiffs challenge this conclusion on two grounds. We consider and reject each.

1. *Liability for Misrepresentations Motivated by "Actual Fraud, Corruption or Actual Malice"*

Plaintiffs contend that the Act's immunity for legislative policy making is limited by the exception to the immunity conferred by a different provision of the Act, section 822.2. That section provides that "[a] public employee acting in the scope of his employment is not liable for an injury caused by his misrepresentation, whether or not such misrepresentation be negligent or intentional, *unless he is guilty of actual fraud, corruption or actual malice*." (*Ibid.*, italics added.) Plaintiffs assert that section 822.2's exception should also operate as an exception to the immunities conferred by sections 820.2, 821 and 821.2 for legislative policy making. The cross-applicability of section 822.2's exception presents an issue of statutory construction. Our touchstone in this task is the Legislature's intent. (*People v. Skiles* (2011) 51 Cal.4th 1178, 1185.)

6

The starting point for ascertaining legislative intent is the language used in the statute itself. (*People v. Valladoli* (1996) 13 Cal.4th 590, 597.) The language here is ambiguous. On the one hand, sections 820.2, 821 and 821.2 do not themselves contain any exception for misrepresentations motivated by actual fraud, corruption or actual malice. In *Tur v. City of Los Angeles* (1996) 51 Cal.App.4th 897, the court held that section 822.2's exception did not apply when a public employee was relying on an immunity conferred by a different section of the Act. (*Tur*, *supra*, at pp. 902-903 [not applying § 822.2's exception to immunity against malicious prosecution actions].) *Tur* seemingly rejects plaintiffs' similar entreaty to export section 822.2's exception to other immunities. On the other hand, if we follow the maxim that statutes are to be read "'with reference to the entire scheme of law of which [they are a] part'" (*People v. Pieters* (1991) 52 Cal.3d 894, 899, quoting *Clean Air Constituency v. California State Air Resources Bd.* (1971) 11 Cal.3d 801, 814), we could read section 822.2's exception as an exception to every immunity conferred by the Act. Indeed, section 820.2 explicitly notes that its immunity may be abrogated "as otherwise provided by statute."

When the plain language of a statute is inconclusive, we must look elsewhere for affirmative indications of legislative intent. (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los* Angeles (2012) 55 Cal.4th 783, 803.) In this case, it is clear that the Legislature intended the immunity from tort liability attaching to legislative policy making decisions to apply even when legislators acted with improper motives. Section 820.2 is the critical immunity provision here because the City Council defendants' discretionary decision was voting against a resolution and thereby denying permits and variances. On these facts, section 820.2's broader immunity embraces the more specific immunities for voting on resolutions and denying permits and variances conferred by sections 821 and 821.2.

The Legislative Committee's comment indicates that section 820.2 was meant to "restate[] pre-existing California law" (Legis. Com. com., West's Ann. Gov. Code, foll. § 820.2), and directs the reader to *Lipman v. Brisbane Elementary*

7

*School District* (1961) 55 Cal.2d 224, superseded by section 815, and *White v. Towers* (1951) 37 Cal.2d 727 (*White*).  *Lipman* and *White* hold that "government officials are not personally liable for their discretionary acts within the scope of their authority even though it is alleged that their conduct was malicious. [Citations.]" (*Lipman*, *supra*, at p. 229; *White*, *supra*, at p. 730.)  They reason that although absolute immunity from tort damages undercuts the "public policy of protecting individuals from oppressive official action" (*White*, *supra*, at p. 729), such immunity is necessary because "experience has shown that the common good is best served by permitting law enforcement officers to perform their assigned tasks without fear of being called to account in a civil action" (*id.*, p. 730).  *White* further notes that immunity from tort damages removes one possible deterrent against maliciously motivated conduct, but concludes that the threats of criminal prosecution and of "'. . . being ousted from office on that account . . .'" are sufficient surrogates (*ibid.*).

The logic underlying these cases applies even more forcefully in the context of legislator's discretionary, policy-making decisions.  Like all other public employees, legislators benefit from immunity that does not dissipate "'. . . upon the mere allegation of improper motives or unlawful acts . . .'" because such immunity eliminates the "'. . . threat of personal liability . . .'" (*Martelli v. Pollock* (1958) 162 Cal.App.2d 655, 659), and frees public employees to exercise their "'. . . honest judgment uninfluenced by fear of consequences personal to themselves . . .'" (*White, supra*, 37 Cal.2d at p. 732).  In short, absolute immunity makes sure that "'. . . it is not a tort for Government to govern. . . .'"  (*HFH, Ltd. v. Super. Ct. of Los Angeles County* (1975) 15 Cal.3d 508, 519, quoting *Dalehite v. United States* (1952) 346 U.S. 15, 57 (Jackson, J., dissenting).)

With legislators, absolute immunity also furthers the separation of powers.  The judiciary is not in the business of "'. . . inquir[ing] into the "motivation or mental processes" which may underlie action by a nonjudicial agency of government.'" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 324, quoting *In re Fain*

(1976) 65 Cal.App.3d 376, 393, fn. 14.)  This is why an elected "official's motives, no matter how self-interested they may be, cannot vitiate otherwise valid government action.  [Citations.]"  (*Blank*, *supra*, at p. 325.)  A rule hinging tort immunity on whether legislators made misrepresentations motivated by "actual fraud, corruption, or actual malice" (§ 822.2) would put legislators' motives front and center.  It would also put judges in the uncomfortable position of "question[ing] the wisdom of . . . legislative decision[s] through tort litigation.  [Citation.]"  (*Wood v. County of San Joaquin* (2003) 111 Cal.App.4th 960, 972; *Caldwell*, *supra*, 10 Cal.4th at p. 981 [noting how judicial review might "'. . . affect the coordinate body's decision-making process'"].)  This threat to the constitutionally mandated separation of powers counsels against plaintiffs' construction.  (*People v. Leiva* (2013) 56 Cal.4th 498, 506-507 ["'. . . when faced with an ambiguous statute that raises serious constitutional questions, [we] should endeavor to construe the statute in a manner which *avoids* any doubt concerning its validity'"], quoting *Young v. Haines* (1986) 41 Cal.3d 883, 898.)

Even if our Legislature's intent were not so clear, we are still required to construe statutes to be "'. . . consistent with justice and common sense . . .'" rather than to "'. . . lead[] to mischief or absurdity. . . .'"  (*Shoemaker v. Myers* (1992) 2 Cal.App.4th 1407, 1424, quoting *Lampley v. Alvarez* (1975) 50 Cal.App.3d 124, 128-129.)  Plaintiffs' proffered construction falls into this latter category because it would allow section 822.2's exception to swallow the rule of immunity in sections 820.2, 821 and 821.2.  By the simple expedient of specifically pleading that a legislator's policy decision was motivated by fraud, malice or corruption, an unhappy constituent could subject that legislator to protracted pretrial litigation or trial, even if the legislator is ultimately vindicated.  This threat of harassment and personal liability is precisely what the immunity in sections 820.2, 821 and 821.2 was enacted to prevent.  Plaintiffs' construction of the Act would accordingly "frustrate the legislative purpose" behind these immunities.  (*Shoemaker*, *supra*, at pp. 1424-1425, quoting *Barber v. Blue* (1966) 65 Cal.2d 185,

9

188.)  We have rejected similar attempts to "abrogate" immunities by "maneuvering" the "rules of pleading and procedure."  (*O'Hagan v. Bd. of Zoning Adjustment* (1974) 38 Cal.App.3d 722, 730; accord, *Land Waste Management v. Contra Costa County Bd. of Supervisors* (1990) 222 Cal.App.3d 950, 962-963; *Mikkelsen v. State of Calif.* (1976) 59 Cal.App.3d 621, 630.)

By contrast, reading section 822.2's exception for misrepresentations motivated by actual fraud, corruption or actual malice as not qualifying the tort immunity that otherwise attaches to legislators' policy making decisions best harmonizes the legislative intent behind all of these provisions.  It effectuates the intent behind sections 820.2, 821 and 821.2 by eliminating the danger of harassment and chilling that springs from susceptibility to tort lawsuits while preserving oversight by criminal prosecution and by the electorate.  At the same time, this construction appropriately circumscribes the immunity for misrepresentations conferred by section 822.2.  Public employees not engaged in legislative or other discretionary policy making remain liable for misrepresentations they make in the course of their employment if those misrepresentations (1) do not interfere with commercial or financial interests (*Johnson v. State of Cal.* (1968) 69 Cal.2d 782, 790-800 [parole officer's act in not warning foster parents of teenager's homicidal tendencies not covered by § 822.2]; *Bastian v. County of San Luis Obispo* (1988) 199 Cal.App.3d 520, 532-533 [police officer's act in misrepresenting accident victim's use of alcohol not covered by § 822.2]; *Michael J. v. Los Angeles County Dept. of Adoptions* (1988) 201 Cal.App.3d 859, 868 [county employees acts in misrepresenting adopted baby's medical condition not covered by § 822.2]); or (2) are pled with specific facts and subsequently proven to be motivated by actual fraud, corruption or actual malice, *Masters v. San Bernardino County Employees Retirement Assn.* (1995) 32 Cal.App.4th 30, 42 & fn. 9 (*Masters*) [county plan administrator may be liable under § 822.2's exception for hiding medical reports to prevent plaintiff from being found eligible for disability pension]; cf. *Golden West Baseball Company v. Talley* (1991) 232 Cal.App.3d 1294, 1305-1306 [city manager

10

would not be entitled to judgment on immunity grounds for misrepresenting plaintiffs' rights under lease if plaintiffs had produced any evidence of fraud or corruption], disapproved on other grounds by *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 526-527; accord, *Curcini v. County of Alameda* (2008) 164 Cal.App.4th 629, 649 ["the pleader must . . . allege facts" supporting actual fraud, corruption or actual malice; "conclusory allegations" insufficient to survive demurrer].[3]

For these reasons, we conclude that the City Council defendants are immune from tort damages for their legislative denial of plaintiffs' application.

2. *Constitutional arguments*

Plaintiffs alternatively contend that their tort suit against the City Council defendants is premised largely on violations of procedural due process. In particular, plaintiffs allege that (1) the City Council's findings differed from the Planning Commission's findings; (2) plaintiffs received less speaking time than the 35 opponents to their application at the City Councils' meeting; (3) some of the City Council defendants labored under an unspecified "conflict of interest"; and (4) a staff member referred to plaintiffs' project as having the incorrect number of parking spaces (18 instead of 19), which shows that the City Council defendants were evaluating the wrong set of plans.

To be sure, the courts are currently divided on the question of whether the Act's immunities extend to claims of constitutional error. (Compare *Rosenthal v. Vogt* (1991) 229 Cal.App.3d 69, 75 [immunity applies to claim for denial of a fair hearing]; *State of Cal. v. Super. Ct.* (1974) 12 Cal.3d 237, 244-245 [same] with *Young v. County of Marin* (1987) 195 Cal.App.3d 863, 869 [immunity does not apply to a claim for a First Amendment violation].) But we need not resolve that

---

[3] Because all of these sections were enacted together as part of the Act in 1963, the canons of statutory construction giving effect to specific statutes over general statutes (*Arterberry v. County of San Diego* (2010) 182 Cal.App.4th 1528, 1536), and to later-enacted statutes (*DeJung v. Super. Ct.* (2008) 169 Cal.App.4th 533, 547), are of no assistance.

11

issue because tort damages are in any event unavailable for the procedural due process violations. (*Katzberg v. Regents of Univ. of Calif.* (2002) 29 Cal.4th 300, 321, 324.)

B. *The City*

The City is a "public entity" presumptively immune from tort liability. (§§ 815, subd. (a), 811.2; *McCarty v. Dept. of Transp.* (2008) 164 Cal.App.4th 955, 961.) The Act nevertheless specifies the situations in which a public entity may be (1) directly liable for injuries (§§ 815.4, 815.6, 818.5); or (2) vicariously liable for injuries caused by its employees (§ 815.2, subd. (a); *M.P. v. City of Sacramento* (2009) 177 Cal.App.4th 121, 128-129; accord, *Bradford v. State of Calif.* (1973) 36 Cal.App.3d 16, 20-21 [public entity has both direct and vicarious liability].)

Plaintiffs allege that the City is liable for two reasons. First, they argue that the City is *vicariously* liable for the City Council defendants' actionable misrepresentations, even though the City cannot be held *directly* liable for any misrepresentations under section 818.8. We reject this argument for two reasons. As we discuss above, the City Council defendants are themselves immune. Because they are immune, so is the City. (§ 815.2, subd. (b) ["a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability"].) Even if we had concluded that section 822.2's exception applied to the City Council defendants and rendered them potentially liable, it is well settled that section 818.8 confers upon public entities an absolute immunity for *all* misrepresentations, and that this immunity trumps any vicarious liability for egregious misrepresentations of its employees actionable against the employees themselves. (*Harshbarger v. City of Colton* (1988) 197 Cal.App.3d 1335, 1340-1341; *Universal By-Products, Inc. v. City of Modesto* (1974) 43 Cal.App.3d 145, 154.)

Second, plaintiffs argue that section 815.3, subdivision (a), renders the City jointly liable in tort as long as the City is named in their complaint as a codefendant with an "elected official." We disagree. Section 815.3 erects a rule of

12

pleading requiring a public entity to be named as a joint tortfeasor before judgments against an elected official may be enforced against that entity. Section 815.3 does not purport to eliminate all of a public entity's tort immunities once that entity is alleged to be a codefendant.

### III. *Mandamus Petition*

Because the trial court ruled that plaintiffs had not exhausted their administrative remedies, it had no occasion to decide the propriety of plaintiffs' request for mandamus relief. The Act's immunity reaches only "personal tort liability" and does not immunize against or otherwise preclude mandamus review. (*Masters*, *supra*, 32 Cal.App.4th at p. 47, fn. 11.) Because plaintiffs' prayer for mandamus relief has yet to be considered, we would ordinarily remand the issue to the trial court. However, we conclude that remand would be futile because plaintiffs are not entitled to this relief as a matter of law. (*Aryeh v. Canon Business Solutions* (2012) 55 Cal.4th 1185, 1191.)

Plaintiffs ground their request for mandamus on three theories. First, they seek an order compelling defendants to grant their application because City Council members had so promised. This is indistinguishable from a claim that defendants are estopped by their prior statements, and estoppel does not lie against the government in this context. (*Toigo v. Town of Ross* (1998) 70 Cal.App.4th 309, 321-324.)

Second, plaintiffs seek a new hearing before the City Council because the City Council's review did not comply with procedural due process. A viable due process claim rests on the deprivation of a protected property interest. Because plaintiffs had no entitlement to a permit or variance at the time the City Council rejected their application (*Clark v. City of Hermosa Beach* (1996) 48 Cal.App.4th 1152, 1182-1183), they lack the necessary predicate for a procedural due process claim.

Lastly, plaintiffs allege that the defendants did not "follow legal standards." Because public agencies are presumed to regularly perform their

13

official duty (Evid. Code, § 664; *Moore v. Twentynine Palms County Water Dist.* (1957) 156 Cal.App.2d 109, 111 [presumption applies at demurrer stage]), a plaintiff must plead sufficient facts to overcome that presumption (*Schwartz v. Poizner* (2010) 187 Cal.App.4th 592, 599; *Romero v. County of Santa Clara* (1970) 3 Cal.App.3d 700, 703-704.) Plaintiffs' bare allegation that defendants did not "follow legal standards," without more, is insufficient. Moreover, because plaintiffs have not sought to provide any additional explication to the trial court or this court, we conclude that plaintiffs have not established "a reasonable possibility" that this defect can be cured by further amendment of their complaint. (*Reynolds*, *supra*, 36 Cal.4th at p. 1091.)

*DISPOSITION*

The judgment is affirmed. Costs on appeal are awarded to defendants. CERTIFIED FOR PUBLICATION.

HOFFSTADT, J.[*]

We concur:

YEGAN, Acting P. J.

PERREN, J

---

[*] (Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to art. 6, § 6 of the Cal. Const.)

14

Rebecca S. Riley, Judge

Superior Court County of Ventura

_____

      Law Offices of James B. Devine and James B. Devine for Plaintiffs and Appellants.

      Ariel Pierre Calonne, City Attorney, Andy H. Viets, Senior Assistant Attorney, Jennifer Lee, Assistant City Attorney for Defendants and Respondents.