Filed 12/30/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CITY OF LOS ANGELES, | B261246 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. BS148148) |
| CITY OF LOS ANGELES EMPLOYEE RELATIONS BOARD, | |
| Defendant and Respondent; | |
| DEPARTMENT OF WATER AND POWER MANAGEMENT EMPLOYEES ASSOCIATION, | |
| Real Party in Interest and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant, Judge. Reversed and remanded.

Mike N. Feuer, City Attorney and Wendy K. Genz, Deputy City Attorney for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

The Myers Law Group, Adam Stern and D. Smith for Real Party in Interest and Respondent.

————————————————

The City of Los Angeles (City), acting by and through its Department of Water and Power (DWP), appeals the judgment of dismissal entered after the superior court sustained the demurrer of real party in interest Department of Water and Power Management Employees Association (MEA) to the DWP's petition for writ of mandate. The sole issue before us is whether Government Code section 3509.5[1] controls review of a decision of the City's Employee Relations Board (ERB), or whether the ERB's decisions are reviewable on a writ petition brought in the superior court. We conclude section 3509.5 does not apply to ERB decisions, and therefore reverse the superior court's order and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

1. *The parties*

The DWP is a municipal utility and a proprietary department of the City. Labor relations between the City and its employees are governed by the City's Employee Relations Ordinance (ERO), codified in the Los Angeles Administrative Code section 4.800 et seq. The ERB, which was established by the ERO, is charged with, among other things, certifying employee bargaining units and investigating and determining the validity of unfair employee relations practices, including resolving disputes about wages, hours, and other terms and conditions of City employees' employment. Real party in interest MEA is the certified bargaining representative for DWP management employees.

---

[1]     All further undesignated statutory references are to the Government Code.

2

2. *The dispute*

According to the allegations of the DWP's petition, which we accept as true for purposes of reviewing the superior court's ruling on MEA's demurrer (*Weiss v. City of Los Angeles* (2016) 2 Cal.App.5th 194, 205; *Vitkievicz v. Valverde* (2012) 202 Cal.App.4th 1306, 1311), in approximately 1994 DWP Transmission and Distribution District Supervisor Dennis Barr and Transmission and Distribution Manager Robert Spease, both members of the MEA and employees of the DWP, entered into a " 'handshake agreement' " regarding compensation for transmission supervisors' weekend standby duties. Barr and Spease agreed that DWP supervisors who were assigned to weekend standby duty, but not actually called in to work, would be compensated for their time. Although a payroll code for such standby duty existed, it was never used; instead, standby time was reported to payroll as overtime, and supervisors were compensated for their hours.

In June 2012 the DWP's executive management learned of this arrangement and ordered the cessation of standby duty payments to MEA members unless and until a standby provision was negotiated in a Memorandum of Understanding (MOU) or other formal agreement.

On September 12, 2012, the MEA filed with the ERB an unfair employee relations practices claim (UERP 1885) alleging that the DWP had violated the ERO, Los Angeles Administrative Code section 4.860, by unilaterally changing MEA members' terms and conditions of employment in regard to standby pay without giving MEA notice or the opportunity to bargain. The DWP took the position that it had not violated the ERO because pay for standby duties had never been incorporated into the

3

MOU between the DWP and the MEA, had never been ratified or approved by a final policymaking authority, and was therefore not a binding past practice.

On May 1 and 2, 2013, an ERB hearing officer heard the unfair practices claim at a hearing at which evidence was taken. On October 9, 2013, the hearing officer issued a report and recommendation in favor of MEA, finding that MEA had established the existence of a binding past practice of providing compensation for standby duties to certain MEA members, and that the DWP had discontinued the practice without first giving MEA notice and an opportunity to meet and confer. The DWP filed exceptions to the report and recommendation. On January 27, 2014, the ERB adopted the hearing officer's written decision and issued a final order in favor of the MEA.

3. *The petition for writ of mandate*

The DWP challenged the ERB's decision by means of a petition for writ of administrative mandate (Code Civ. Proc., § 1094.5) filed in the superior court on April 10, 2014, within 90 days of the ERB's order. The DWP argued the ERB's decision exceeded its authority; violated the City Charter and public policy; was not supported by findings of fact or law; and was not supported by the evidence.

In response, the MEA filed a demurrer asserting that the petition was untimely and the superior court lacked subject matter jurisdiction over it. Relying primarily on *Singletary v. International Brotherhood of Electrical Workers, Local 18* (2012) 212 Cal.App.4th 34 (*Singletary*), MEA argued that review of ERB decisions is governed by section 3509.5, which requires that a challenge to a final decision be filed with the Court of Appeal within 30 days of its issuance. In the MEA's view, the DWP had

4

"simply filed its writ in the wrong court," and because over 30 days had elapsed since issuance of the ERB's final order, the DWP was time-barred from filing its petition in the Court of Appeal.

The DWP opposed the demurrer. It argued that section 3509.5 applied only to the Public Employment Relations Board (PERB), not the ERB, and contrary language in *Singletary* was nonbinding dicta and was incorrect in any event. The DWP urged that a petition for writ of administrative mandamus filed in the superior court was the appropriate mechanism for review of the ERB's decisions. The DWP alternatively urged that, if the procedural requirements of section 3509.5 applied to ERB, then section 3509, subdivision (f) – which excludes designated management employees from PERB's jurisdiction – applied to exclude MEA members from ERB's jurisdiction as well. Therefore, DWP argued that if the superior court concluded section 3509.5 applied to ERB, it should grant DWP leave to amend the petition to argue that no ERB hearing should have been held at all.

On September 30, 2014, the superior court sustained the MEA's demurrer to the DWP's petition with leave to amend. The court found persuasive the DWP's arguments that the plain language and relevant legislative history indicated section 3509.5 was inapplicable to the ERB. However, the court concluded statements to the contrary in *Singletary* were not dicta and were binding upon it. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) In light of the DWP's alternative argument regarding management employees, the court granted leave to amend. The DWP declined to amend the petition and on November 13, 2014, the court entered a signed order dismissing

5

it.  Notice of entry of dismissal was filed and served on January 6, 2015.

On January 9, 2015, the DWP filed a timely notice of appeal.

DISCUSSION

The dispositive question before us is whether section 3509.5 applies to decisions of the ERB.  The DWP argues that based on the plain language of the relevant statutory provisions and legislative history, it does not.  The MEA argues to the contrary. We conclude the DWP has the better argument, and section 3509.5 is inapplicable to ERB decisions.  Before reaching the merits, we first consider three preliminary issues raised by the MEA.

1. *Preliminary issues*

a. *Appeal from minute order dismissing the case*

The MEA argues the DWP's appeal should be dismissed because the DWP has "appealed a non-appealable minute order." It contends that a minute order dismissing a case is not appealable, and an order sustaining or overruling a demurrer is reviewable on appeal only from a judgment of dismissal.

The MEA's contentions lack merit.  On September 30, 2014 the superior court issued a minute order sustaining MEA's demurrer with 30 days leave to amend.  The minute order stated that if the DWP "has not amended by the above date, the Court will dismiss the matter."  On November 13, 2014, the court issued a signed minute order stating: "There being no amended Petition filed, the case is hereby dismissed."  The DWP subsequently filed and served a notice of entry of the order of dismissal.

Code of Civil Procedure section 581d provides that "All dismissals ordered by the court shall be in the form of a written

6

order signed by the court and filed in the action and *those orders when so filed shall constitute judgments and be effective for all purposes . . . .*" (Italics added.) As the dismissal here met these requirements, the DWP's appeal is proper. (See, e.g., *Vitkievicz v. Valverde, supra,* 202 Cal.App.4th at p. 1310 & fn. 1; *Sisemore v. Master Financial, Inc.* (2007) 151 Cal.App.4th 1386, 1396 [although "[a]n order sustaining a demurrer without leave to amend is not appealable," an "appeal is proper . . . after entry of a dismissal on such an order"]; *Morgan Creek Residential v. Kemp* (2007) 153 Cal.App.4th 675, 683 [trial court sustained demurrer without leave to amend; the "ensuing order of dismissal" constituted "a judgment subject to appeal"]; *Alexander v. Exxon Mobil* (2013) 219 Cal.App.4th 1236, 1249.)

b. *Mootness*

MEA next argues the appeal should be dismissed as moot. It contends no justiciable controversy exists because the parties have come to an agreement regarding the standby pay issue. In support of this contention, MEA requests that we take judicial notice of a MOU covering the period October 1, 2012 through December 31, 2016, providing that certain DWP employees shall receive specified amounts of weekday and weekend standby pay. (See Evid. Code, §§ 459, subd. (a), 452, subd. (h)).

The DWP opposes the request for judicial notice on the ground the MOU is irrelevant and does not demonstrate the issues presented in the appeal are moot. DWP urges that the parties' agreement on standby pay resolves neither the question of the superior court's jurisdiction over a petition for writ of administrative mandate challenging an ERB decision, nor the underlying issue of whether MEA members have sufficient authority to create a past practice binding on the DWP.

7

Moreover, the DWP contends that the controversy over the jurisdictional issue still exists and is likely to arise between the parties in the future.

" ' "[T]here are three discretionary exceptions to the rules regarding mootness: (1) when the case presents an issue of broad public interest that is likely to recur [citation]; (2) when there may be a recurrence of the controversy between the parties [citation]; and (3) when a material question remains for the court's determination [citation]." ' " (*Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 495-496.) Here, even if the parties' agreement on the question of standby pay renders the appeal technically moot, it seems likely the controversy will arise between the parties in the future, and the issue is of continuing public interest. (See *People v. Morales* (2016) 63 Cal.4th 399, 409; *Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1079, fn. 3 (*Coachella*).) We therefore exercise our discretion to address the merits of the DWP's contentions.[2] (*Coachella, supra,* at p. 1079 & fn. 3; *City and County of San Francisco v. International Union of Operating Engineers, Local 39* (2007) 151 Cal.App.4th 938, 943 & fn. 3.)

---

[2] Because the fact the parties have come to an agreement on the standby pay issue is therefore irrelevant to our decision, we decline MEA's request that we take judicial notice of the MOU. (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 544, fn. 4.)

c. *Amendment of the petition*

MEA next contends that the "DWP has waived review of any possible amendment to its petition." However, as noted, the superior court granted the DWP leave to amend and the DWP opted not to do so. The DWP reiterates in its briefs on appeal that it does not seek further leave to amend and has not requested review of any issue related to possible amendment of the petition. The question of amendment to the petition is therefore not before us.

2. *Section 3509.5 does not apply to decisions of the ERB*

a. *Standard of review*

A demurrer tests the legal sufficiency of the factual allegations in a complaint and will be sustained when the pleading is defective on its face. (*Mitchell v. State Dept. of Public Health* (2016) 1 Cal.App.5th 1000, 1007; *Vitkievicz v. Valverde, supra,* 202 Cal.App.4th at pp. 1310-1311.) A demurrer may properly be sustained on the ground the court lacks subject matter jurisdiction (Code Civ. Proc., § 430.10, subd. (a)) and on statute of limitations grounds if the defect is clear on the face of the complaint. (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1232.) We independently review the trial court's ruling. (*Vitkievicz v. Valverde, supra,* at pp. 1310-1311.) De novo review is additionally proper here because the question presented is purely one of law. (*John v. Superior Court* (2016) 63 Cal.4th 91, 95; *Singletary, supra,* 212 Cal.App.4th at p. 41.)

b. *The PERB, the ERB, the ERCOM, and the MMBA*

To properly frame the issue at hand, a review of the development of California's labor law as it pertains to local public employment is necessary. The National Labor Relations Act governs collective bargaining in private sector employment, but

9

leaves states free to regulate labor relationships with their public employees.  (*County of Los Angeles v. Los Angeles County Employee Relations Com.* (2013) 56 Cal.4th 905, 915 (*County of Los Angeles*).)  "Public employees in California do not have the right to bargain collectively absent enabling legislation."  (*Ibid.*)

In 1961, the Legislature enacted the George Brown Act, which for the first time recognized the rights of state and local public employees to organize and have their representatives "meet and confer" with their public agency employers over wages and working conditions.  (*Coachella, supra,* 35 Cal.4th at p. 1083; *City of San Jose v. Operating Engineers Local Union No. 3* (2010) 49 Cal.4th 597, 603 (*City of San Jose*).)  Those rights were expanded in 1968 with enactment of the Meyers-Milias-Brown Act (MMBA) (§ 3500 et seq.), which authorized public entities and labor representatives to not only confer, but to reach binding agreements regarding wages, hours, and working conditions. (*Coachella, supra,* at p. 1083; *City of San Jose, supra,* at p. 603; *County of Los Angeles, supra,* 56 Cal.4th at p. 915.)  Section 3507 of the MMBA provides that a public agency may adopt reasonable rules and regulations after consultation in good faith with representatives of a recognized employee organization or organizations for the administration of employer-employee relations.  (§ 3507, subd. (a).)

The Legislature created the PERB, an expert, quasi-judicial administrative agency modeled after the National Labor Relations Board, in 1975.  (*County of Los Angeles, supra,* 56 Cal.4th at p. 916; *City of San Jose, supra,* 49 Cal.4th at pp. 603-604; *Coachella, supra,* 35 Cal.4th at pp. 1084-1085.) PERB was initially created to administer and enforce a different employment relations statute, the Educational Employment

10

Relations Act.  (*City of San Jose, supra,* at pp. 603-604; *Coachella, supra,* at pp. 1084-1085.)  Over time, the Legislature expanded PERB's jurisdiction "as the Legislature passed new laws addressing specific realms of public employment." (*County of Los Angeles, supra,* at p. 916.)  Both the City and the County of Los Angeles have established their own administrative bodies to administer the MMBA and resolve employment disputes involving City or County employees.  In 1968, the year the MMBA was enacted, the County created the Los Angeles County Employee Relations Commission (ERCOM) for such purposes. (*Ibid*.)  In 1971, the City enacted the ERO which, as noted *ante,* created the ERB and authorized it to, among other things, investigate, hold public hearings, and determine the validity of charges of unfair employee relations practices.  (See L.A. Admin. Code, §§ 4.800 et seq., 4.810, 4.860; *Singletary, supra,* 212 Cal.App.4th at pp. 43-44.)

"When the Legislature enacted the MMBA in 1968, it had not yet created the PERB, and it did not include in the MMBA any provisions expressly authorizing either administrative or judicial proceedings to enforce its provisions.  Resolving the resulting uncertainty regarding methods of enforcement, [our Supreme Court] in 1994 concluded that MMBA-created rights and duties were enforceable by a traditional mandate action under Code of Civil Procedure section 1085." (*Coachella, supra,* 35 Cal.4th at p. 1084.)  Thus, prior to July 2001, a party claiming a violation of the MMBA could bring an action in superior court. (*City and County of San Francisco v. International Union of Operating Engineers, Local 39, supra,* 151 Cal.App.4th at p. 943.)

The Legislature remedied the MMBA's lack of an administrative enforcement mechanism in 2000 by enacting

11

section 3509, which brought the MMBA within PERB's authority. Effective July 1, 2001, section 3509 expressly gave PERB "exclusive initial jurisdiction over complaints alleging unfair labor practices violating the MMBA."[3] (*County of Los Angeles,*

---

[3] Section 3509 currently provides: "(a) The powers and duties of the board described in Section 3541.3 shall also apply, as appropriate, to this chapter and shall include the authority as set forth in subdivisions (b) and (c). Included among the appropriate powers of the board are the power to order elections, to conduct any election the board orders, and to adopt rules to apply in areas where a public agency has no rule.

"(b) A complaint alleging any violation of this chapter or of any rules and regulations adopted by a public agency pursuant to Section 3507 or 3507.5 shall be processed as an unfair practice charge by the board. The initial determination as to whether the charge of unfair practice is justified and, if so, the appropriate remedy necessary to effectuate the purposes of this chapter, shall be a matter within the exclusive jurisdiction of the board, except that in an action to recover damages due to an unlawful strike, the board shall have no authority to award strike-preparation expenses as damages, and shall have no authority to award damages for costs, expenses, or revenue losses incurred during, or as a consequence of, an unlawful strike. The board shall apply and interpret unfair labor practices consistent with existing judicial interpretations of this chapter.

"(c) The board shall enforce and apply rules adopted by a public agency concerning unit determinations, representation, recognition, and elections.

"(d) Notwithstanding subdivisions (a) to (c), inclusive, the employee relations commissions established by, and in effect for, the County of Los Angeles and the City of Los Angeles pursuant to Section 3507 shall have the power and responsibility to take

*supra,* 56 Cal.4th at p. 916; *Coachella, supra,* 35 Cal.4th at p. 1077; *City of San Jose, supra,* 49 Cal.4th at p. 605.) Section 3509 thus removed "from the courts their initial jurisdiction over MMBA unfair practice charges" and vested such jurisdiction in PERB. (*Coachella, supra,* at p. 1089; *City of San Jose, supra,* at p. 605; *Singletary, supra,* 212 Cal.App.4th at p. 43.)

At the same time, section 3509 expressly exempted the City and County of Los Angeles from PERB's jurisdiction. (§ 3509, subd. (d); *County of Los Angeles, supra,* 56 Cal.4th at p. 916; *Coachella, supra,* 35 Cal.4th at p. 1077, fn. 1.) Section 3509, subdivision (d) provides: "Notwithstanding subdivisions (a) to (c),

---

actions on recognition, unit determinations, elections, and all unfair practices, and to issue determinations and orders as the employee relations commissions deem necessary, consistent with and pursuant to the policies of this chapter.

"(e) Notwithstanding subdivisions (a) to (c), inclusive, consistent with, and pursuant to, the provisions of Sections 3500 and 3505.4, superior courts shall have exclusive jurisdiction over actions involving interest arbitration, as governed by Title 9 (commencing with Section 1280) of Part 3 of the Code of Civil Procedure, when the action involves an employee organization that represents firefighters, as defined in Section 3251.

"(f) This section shall not apply to employees designated as management employees under Section 3507.5.

"(g) The board shall not find it an unfair practice for an employee organization to violate a rule or regulation adopted by a public agency if that rule or regulation is itself in violation of this chapter. This subdivision shall not be construed to restrict or expand the board's jurisdiction or authority as set forth in subdivisions (a) to (c), inclusive."

13

inclusive, the employee relations commissions established by, and in effect for, the County of Los Angeles and the City of Los Angeles pursuant to Section 3507 shall have the power and responsibility to take actions on recognition, unit determinations, elections, and all unfair practices, and to issue determinations and orders as the employee relations commissions deem necessary, consistent with and pursuant to the policies of this chapter." (§ 3509, subd. (d); *County of Los Angeles, supra,* at p. 916.) Thus, allegations of unfair practices by the County or City must be brought before ERCOM or ERB, respectively, not PERB. (*County of Los Angeles, supra,* at p. 916.) ERCOM and ERB are thus "separate agenc[ies] empowered to resolve public employment labor disputes" in the County and City of Los Angeles, respectively, "just as PERB does for all other counties in California." (*Ibid*.)

In 2002, the Legislature enacted section 3509.5, which provides for judicial review of PERB decisions.[4] (*International*

---

[4]    Section 3509.5 provides in full: "(a) Any charging party, respondent, or intervenor aggrieved by a final decision or order of the board in an unfair practice case, except a decision of the board not to issue a complaint in such a case, and any party to a final decision or order of the board in a unit determination, representation, recognition, or election matter that is not brought as an unfair practice case, may petition for a writ of extraordinary relief from that decision or order. A board order directing an election may not be stayed pending judicial review.

"(b) A petition for a writ of extraordinary relief shall be filed in the district court of appeal having jurisdiction over the county where the events giving rise to the decision or order occurred. The petition shall be filed within 30 days from the date of the issuance of the board's final decision or order, or order denying

reconsideration, as applicable.  Upon the filing of the petition, the court shall cause notice to be served upon the board and thereafter shall have jurisdiction of the proceeding.  The board shall file in the court the record of the proceeding, certified by the board, within 10 days after the clerk's notice unless that time is extended by the court for good cause shown.  The court shall have jurisdiction to grant any temporary relief or restraining order it deems just and proper, and in like manner to make and enter a decree enforcing, modifying, and enforcing as modified, or setting aside in whole or in part the decision or order of the board.  The findings of the board with respect to questions of fact, including ultimate facts, if supported by substantial evidence on the record considered as a whole, shall be conclusive.  Title 1 (commencing with Section 1067) of Part 3 of the Code of Civil Procedure relating to writs shall, except where specifically superseded by this section, apply to proceedings pursuant to this section.

"(c) If the time to petition for extraordinary relief from a board decision or order has expired, the board may seek enforcement of any final decision or order in a district court of appeal or superior court having jurisdiction over the county where the events giving rise to the decision or order occurred.  The board shall respond within 10 days to any inquiry from a party to the action as to why the board has not sought court enforcement of the final decision or order. If the response does not indicate that there has been compliance with the board's final decision or order, the board shall seek enforcement of the final decision or order upon the request of the party.  The board shall file in the court the record of the proceeding, certified by the board, and appropriate evidence disclosing the failure to comply with the decision or order.  If, after hearing, the court determines that the order was issued pursuant to the procedures established by the board and that the person or entity refuses to comply with the order, the court shall enforce the order by writ of mandamus or other proper process.  The court may not review the merits of the order."

15

*Assn. of Fire Fighters, Local 188, AFL-CIO v. Public Employment Relations Bd.* (2011) 51 Cal.4th 259, 267 (*International Assn. of Fire Fighters*).) Section 3509.5, subdivision (a) states that a party "aggrieved by a final decision or order of the board in an unfair practice case, except a decision of the board not to issue a complaint in such a case, . . . may petition for a writ of extraordinary relief from that decision or order." Subdivision (b) provides in pertinent part: "A petition for a writ of extraordinary relief shall be filed in the district court of appeal having jurisdiction over the county where the events giving rise to the decision or order occurred. The petition shall be filed within 30 days from the date of the issuance of the board's final decision or order, or order denying reconsideration, as applicable. Upon the filing of the petition, the court shall cause notice to be served upon the board and thereafter shall have jurisdiction of the proceeding." As a result of section 3509.5's enactment, "[f]inal decisions of the PERB are now reviewable by a writ petition filed directly in the Court of Appeal, rather than in the superior court." (*Coachella, supra,* 35 Cal.4th at p. 1078, fn. 2.)[5]

---

[5] A narrow exception exists to section 3509.5's requirement that review of a PERB decision lies with the court of appeal. Notwithstanding section 3509.5, when "PERB refuses to issue a complaint under the MMBA, a superior court may exercise mandamus jurisdiction to determine whether PERB's decision violates a constitutional right, exceeds a specific grant of authority, or is based on an erroneous statutory construction." (*International Assn. of Fire Fighters, supra,* 51 Cal.4th at pp. 264, 271.) However, PERB's refusal to issue a complaint under the MMBA "is not subject to judicial review for ordinary error, including insufficiency of the evidence to support the agency's

16

c. *Application here*

When interpreting a statute, our goal is to effectuate the Legislature's intent. (*Riverside County Sheriff's Dept. v. Stiglitz* (2014) 60 Cal.4th 624, 630; *John v. Superior Court, supra,* 63 Cal.4th at pp. 95-96.) We begin by examining the statutory language, giving the words their usual and ordinary meaning, because this is usually the most reliable indicator of legislative intent. (*Lee v. Hanley, supra,* 61 Cal.4th at pp. 1232-1233; *Poole v. Orange County Fire Authority* (2015) 61 Cal.4th 1378, 1384-1385.) " ' " If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls." [Citation.]' " (*Catlin v. Superior Court* (2011) 51 Cal.4th 300, 304; *Poole v. Orange County Fire Authority, supra,* at p. 1385.) If the statutory language is ambiguous or subject to more than one interpretation, we may look to extrinsic aids, including the legislative history or statutory purpose, to inform our views. (*John v. Superior Court, supra,* at p. 96; *Holland v. Assessment Appeals Bd. No. 1* (2014) 58 Cal.4th 482, 490.)

We conclude section 3509.5 does not govern judicial review of ERB decisions for several reasons. First, the plain language of the relevant statutory provisions indicates section 3509.5 does not apply to ERB decisions. Section 3501 defines various terms as used in the MMBA, Chapter 10 of Division 4 of Title 1 of the Government Code. Subdivision (f) of section 3501 states that, "[a]s used in this chapter," " '[b]oard' means the Public Employment Relations Board established pursuant to Section 3541." Section 3509.5 is contained in Chapter 10 and the

---

factual findings and misapplication of the law to the facts, or for abuse of discretion." (*Id.* at p. 271.)

definition in section 3501, subdivision (f) therefore applies to it. Section 3509.5 states that a party aggrieved by "a final decision or order of *the board* in an unfair practice case" may "petition for a writ of extraordinary relief from *that decision or order*." (§ 3509.5, subd. (a), italics added.) Subdivision (b) states that a "petition for a writ of extraordinary relief shall be filed in the district court of appeal having jurisdiction over the county where the events giving rise to *the decision or order* occurred. The petition shall be filed within 30 days from the date of the issuance of *the board's* final decision or order . . . ." (§ 3509.5, subd. (b), italics added.) Other portions of section 3509.5 repeatedly reference "the board," but nowhere does section 3509.5 mention the ERB or the ERCOM or indicate the provision applies to entities other than PERB. In other words, "the board" in section 3509.5 is the PERB, not the ERB. "The Legislature has power to prescribe legal definitions of its own language, and when an act passed by the Legislature embodies a defined term, its statutory definition is ordinarily binding on the courts." (*Faulder v. Mendocino County Bd. of Supervisors* (2006) 144 Cal.App.4th 1362, 1371; *State ex rel. Dept. of California Highway Patrol v. Superior Court* (2015) 60 Cal.4th 1002, 1011; *Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1063.) Thus, on its face section 3509.5 unambiguously applies only to PERB. The omission of any mention of ERB or ERCOM in section 3509.5 suggests the Legislature did not intend its provisions to apply to them. (See *People v. Arriaga* (2014) 58 Cal.4th 950, 960 ["It is a settled principle of statutory interpretation that if a statute contains a provision regarding one subject, that provision's omission in the same or another statute regarding a related subject is evidence of a different legislative intent"]; *Slocum v.*

18

*State Bd. of Equalization* (2005) 134 Cal.App.4th 969, 978 ["Where the Legislature carefully uses a term or phrase in one place but excludes it in another, we will not imply the term or phrase where excluded"]; *Suarez v. Pacific Northstar Mechanical, Inc.* (2009) 180 Cal.App.4th 430, 443 [under standard rules of statutory construction, courts " 'will not read into the statute a limitation that is not there' "]; *Doe v. City of Los Angeles, supra,* 42 Cal.4th at p. 545; Code Civ. Proc., § 1858.)

Second, we do not readily infer the Legislature has acted to deprive a court of jurisdiction in the absence of an express indication it intended to do so.  Our Supreme Court's analysis in *International Assn. of Fire Fighters* is instructive.  There, the court considered whether the PERB's decision not to issue a complaint was ever subject to judicial review, in light of section 3509.5's provision that an aggrieved party may seek writ relief to challenge " 'a final decision or order of the board in an unfair practice case, *except a decision of the board not to issue a complaint in such a case . . . .*' " (*International Assn. of Fire Fighters, supra,* 51 Cal.4th at pp. 264, 267; § 3509.5, subd. (a).) Concluding that limited review in the superior court was permissible, the court reasoned as follows.  "The California Constitution gives rise to a presumption in favor of at least limited judicial review of state administrative agency actions.  It does so through section 10 of article VI, which, as relevant here, gives superior courts 'original jurisdiction in proceedings for extraordinary relief in the nature of mandamus, certiorari, and prohibition.'  Traditional mandamus review is available 'to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station.'  (Code Civ. Proc., § 1085, subd. (a).)  Recognizing that '[t]he power of superior

19

courts to perform mandamus review of administrative decisions derives in part' from this constitutional provision, [our Supreme Court] has said that ' "[t]he jurisdiction thus vested may not lightly be deemed to have been destroyed." ' [Citations.]" (*Id.* at p. 270.)  A court "will not infer a legislative intent to entirely deprive the superior courts of judicial authority in a particular area; the Legislature must have expressly so provided or otherwise clearly indicated such an intent.  [Citations.]" (*Ibid.*)  Despite section 3509.5's language, *International Assn. of Fire Fighters* concluded "[i]n section 3509.5, the Legislature has not expressly provided or otherwise clearly indicated that under California's MMBA superior courts are prohibited in all circumstances from exercising traditional mandamus jurisdiction to review a PERB decision refusing to issue a complaint." (*International Assn. of Fire Fighters, supra,* at p. 271.)  Similarly, there is no indication in section 3509.5 that the Legislature intended to divest the superior courts of jurisdiction to entertain administrative mandamus proceedings challenging a final ERB order.

Third, the legislative history of sections 3509.5 and 3509 supports the conclusion that section 3509.5 was not intended to apply to the ERB.[6]  (See *Diamond v. Superior Court* (2013) 217 Cal.App.4th 1172, 1189 [even where the plain language of the statute dictates the result, the legislative history may provide additional authority confirming the court's interpretation]; *Doe v.*

_____

[6]    We take judicial notice of the cited legislative history materials relating to sections 3509 and 3509.5.  (Evid. Code, § 452, subd. (c); see *Ennabe v. Manosa* (2014) 58 Cal.4th 697, 709, fn. 9.)

*City of Los Angeles, supra,* 42 Cal.4th at p. 544.)  Section 3509.5 was enacted during the 2001-2002 legislative session by Assembly Bill No. 2908.  The Legislature's uncodified statement of intent provides that by enacting section 3509.5, the legislature intended "to establish procedures for judicial review of determinations *by the Public Employment Relations Board*." (Stats. 2002, ch. 1137, § 1(c), italics added.)  The Legislature did not state it intended to establish procedures for judicial review of decisions of the ERB or ERCOM, separate agencies which the Legislature had expressly exempted from PERB's jurisdiction two years earlier in section 3509, subdivision (d).

Analyses prepared for the Assembly and Senate repeatedly stated that the bill would provide "that the Court of Appeal[] has jurisdiction to review decisions or orders of the Public Employment Relations Board (PERB)."  (See, e.g., Assem. Com. on Public Employees, Retirement and Social Security, analysis of Assem. Bill No. 2908 (2001-2002 Reg. Sess.) as amended Apr. 29, 2002, p. 1; Assem. Com. on Appropriations, analysis of Assem. Bill No. 2908 (2001-2002 Reg. Sess.) as amended Apr. 29, 2002, p. 1; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 2908 (2001-2002 Reg. Sess.) as amended Aug. 5, 2002, p. 1 ["This bill . . . provides that the Court of Appeal[ ] has jurisdiction to review decisions or orders of the Public Employment Relations Board"].)  Bill analyses repeatedly explained that the bill was " 'a necessary clean-up measure' " to Senate Bill No. 739, which had enacted section 3509 in 2000.  It had become " 'apparent that there was the need for some clarification with respect to the Court of Appeal[ ] having jurisdiction to review PERB decisions; and on unfair practice charges over local rules that are in violation [of] the statute.

21

Currently, the other collective bargaining laws for school, state and higher education employees all clearly state that the Court of Appeal[ ] has jurisdiction to review decisions or orders by PERB if an aggrieved person or entity makes a petition for a writ of extraordinary relief.' " (Assem. Com. on Public Employees, Retirement and Social Security, analysis of Assem. Bill No. 2908, *supra,* at p. 1.)

Likewise, a bill analysis prepared by the Department of Finance explained that when section 3509 was enacted, "jurisdiction for the resolution of unfair labor practice charges and representation disputes under the MMBA" was transferred "from the courts to PERB. Prior to [Senate Bill No. 739, which enacted section 3509], PERB administered only three statutes: the Higher Education Employment Relations Act, the Education Employment Relations Act, and the Ralph C. [Dills] Act. All three statutes provide that the Court of Appeal[ ] shall review the decisions made by PERB. However, provisions within [Senate Bill No. 739] failed to change jurisdiction of the review process for MMBA-related decisions by PERB from the Superior Court (as was practiced by the court system) to the Courts of Appeal[ ] (as is practiced by other statutes administered by PERB). [¶] [Assembly Bill No.] 2908 place[s] the review of MMBA decisions by PERB with the Court of Appeal[ ]." (Dept. of Finance, Bill Analysis of Assem. Bill No. 2908 (2001-2002 Reg. Sess.) as amended Aug. 5, 2002.)

The upshot of the foregoing is that the Legislature, in enacting section 3509.5, intended to make sure the review procedure for PERB decisions was consistent, regardless of which statute was at issue. There is no reason to assume the Legislature thought such uniformity was desirable for decisions

issued by ERB and ERCOM, administrative bodies which are separate from the PERB. Certainly, nothing in the committee reports or legislative history indicates an intent that section 3509.5 apply to ERB decisions.

Additionally, the history of section 3509 suggests the Legislature did not intend to divest the superior courts of jurisdiction to entertain mandate proceedings in regard to ERB, as opposed to PERB, decisions. Section 3509 was enacted by Senate Bill No. 739, which was introduced on February 24, 1999 and amended nine times before it became law. An August 16, 1999 amendment to the bill renumbered former section 3509 and added the provision that eventually became current section 3509. (Sen. Bill No. 739 (1999-2000 Reg. Sess.) §§ 6, 9, as amended Aug. 16, 1999.) As originally drafted, subdivision (d) provided: "Notwithstanding subdivisions (a) to (c), inclusive, the employee relations commissions established by, and in effect for, the County of Los Angeles and the City of Los Angeles pursuant to Section 3507 shall have the power and responsibility to take actions on recognition, unit determinations, elections, and unfair practices, and to issue determinations and orders as the employee relations commissions deem necessary, consistent with and pursuant to the policies of this chapter. *Any judicial review applicable to a superior court or municipal court shall be filed directly with the Court of Appeal.*" (Sen. Bill No. 739 (1999-2000 Reg. Sess.) § 9, as amended Aug. 16, 1999, italics added.) The italicized language was subsequently removed in a June 6, 2000 amendment. (Sen. Bill No. 739 (1999-2000 Reg. Sess.) as amended June 6, 2000.) The Legislature's consideration and subsequent rejection of the language requiring judicial review of ERB decisions in the Court of Appeal is strong evidence it did not

intend section 3509.5 to apply to review of ERB decisions. " 'The rejection by the Legislature of a specific provision contained in an act as originally introduced is most persuasive to the conclusion that the act should not be construed to include the omitted provision.' " (*People v. Soto* (2011) 51 Cal.4th 229, 245; *O.W.L. Foundation v. City of Rohnert Park* (2008) 168 Cal.App.4th 568, 590-591 [the " 'Legislature's rejection of specific language constitutes persuasive evidence a statute should not be interpreted to include the omitted language' "]; *People v. Goodloe* (1995) 37 Cal.App.4th 485, 491; *Wilson v. City of Laguna Beach* (1992) 6 Cal.App.4th 543, 555; *Central Delta Water Agency v. State Water Resources Control Bd.* (1993) 17 Cal.App.4th 621, 634.)[7]

To sum up, the legislative history supports our conclusion based on the plain language of the statutes. Neither the plain language of the relevant statutes nor their legislative history suggest that section 3509.5 applies to the review of ERB decisions.

As noted, the superior court agreed that the foregoing considerations supported the conclusion that section 3509.5 did not apply to ERB decisions, but understandably felt constrained by contrary language in *Singletary*. In *Singletary,* plaintiffs, DWP security guards, claimed that their union had breached its duty of fair representation, as well as the collective bargaining

---

[7]    MEA argues that the subsequent rejection of the language contained in the August 16, 1999 amendment to Senate Bill No. 739 is irrelevant because the Legislature's action pertained to the enactment of section 3509 in 2000, rather than the enactment of section 3509.5 in 2002. We disagree that this circumstance renders the legislative history irrelevant.

24

agreement, by failing to ensure overtime was fairly allotted. (*Singletary, supra,* 212 Cal.App.4th at p. 37.) They filed a complaint in the superior court against the union and the City without first obtaining a formal adjudication of the issue by the ERB. (*Id.* at pp. 38-39.) The union demurred on the ground that, inter alia, under section 3509 the superior court lacked subject matter jurisdiction to initially adjudicate the charge. (*Singletary,* at pp. 39-40.) The superior court agreed that ERB had exclusive initial jurisdiction over the claims and dismissed the complaint. (*Id.* at pp. 37, 40.) On appeal, plaintiffs argued that ERB did not have exclusive initial subject matter jurisdiction because, although subdivision (d) of section 3509 granted ERB authority to conduct proceedings, the statute did not state that such authority was exclusive. Plaintiffs also contended they had exhausted their administrative remedies, permitting them to proceed to superior court. (*Singletary,* at p. 41.)

Our colleagues in Division One affirmed. The court reasoned that when remedies are available before an administrative body, a party must generally exhaust those remedies before seeking judicial relief. (*Singletary, supra,* 212 Cal.App.4th at p. 45.) Citing an Assembly analysis of Senate Bill No. 739, *Singletary* observed that when the Legislature extended PERB's jurisdiction in 2000, it recognized that the MMBA had " 'no effective enforcement procedures except for court action, which is time-consuming and expensive. One of the basic principles of an effective collective bargaining law should be to provide for enforcement by an administrative agency with expertise in labor relations. The appropriate role for the courts is to serve as an appellate body.' " (*Id.* at p. 42, quoting Assem. Com. on Appropriations, analysis of Sen. Bill No. 739 (1999-2000

25

Reg. Sess.) as amended June 6, 2000, p. 2.)  The court reasoned that interpreting section 3509, subdivision (d) to allow an unfair labor practice charge to be filed in the superior court in the first instance "would nullify the stated legislative purpose of providing primary jurisdiction in personnel boards for review of violations of the MMBA.  Given that the City's ERB was created in 1971, before the establishment of PERB in 1975, when the Legislature acted in 2000 to expressly specify the means of review of decisions of PERB, the Legislature did not want to appear to nullify the powers of ERB.  Consistent with this purpose, the word '[n]otwithstanding' that prefaces subdivision (d) of section 3509 does not operate to exempt ERB from the review provisions of section 3509, but is merely a recognition of ERB's continued autonomy as an employee relations board.  This fact is recognized in the closing clause of subdivision (d), which states that ERB has the power to 'issue determinations and orders as the employee relations commissions deem necessary, *consistent with and pursuant to the policies of this chapter*.'  [Citation.]  Thus, the provisions of section 3509, subdivisions (a) through (c), to the extent they delimit the jurisdiction of the courts vis-à-vis review of the actions of employee relations boards, apply equally to ERB except that those sections do nothing in derogation of ERB's powers.  [¶]  *For this reason, even if plaintiffs had exhausted their administrative remedies by pursuing their claims before ERB, plaintiffs could not have commenced their action in superior court to challenge ERB's ruling.  Instead, pursuant to section 3509.5, subdivisions (b) and (c), they were required to commence a writ petition in the Court of Appeal within 30 days of the adverse decision.  As a result, the trial court did not err in dismissing the*

26

*action for lack of jurisdiction.*" (*Singletary,* at p. 46, second italics added.)

The DWP argues that the second italicized portion of *Singletary* was dicta, in that the primary issue before the court was whether the ERB had exclusive initial jurisdiction over the plaintiffs' claims, not whether section 3509.5 applied. It points out that an appellate decision is not authority for everything stated in the opinion, but only for the points actually involved and actually decided. "Mere observations by an appellate court are dicta and not precedent, unless a statement of law was 'necessary to the decision . . . .' " (*Areso v. CarMax, Inc.* (2011) 195 Cal.App.4th 996, 1006.) The superior court, on the other hand, carefully parsed the *Singletary* decision and concluded *Singletary*'s observations were not dicta, but were necessary to resolve the plaintiffs' contention that they had exhausted their administrative remedies, a point that was actually involved and actually decided in the decision.

Whether dicta or not, in light of the plain language of section 3509.5 and the legislative history discussed *ante,* we respectfully part company with *Singletary* insofar as it concluded that a party challenging an ERB decision must commence a writ petition in the Court of Appeal within 30 days of the decision pursuant to section 3509.5.[8] On this point, *Singletary*'s conclusion appears to be based on the language in section 3509, subdivision (d), that ERB and ERCOM have "the power and responsibility to take actions on . . . all unfair practices, and to

---

[8]     Although the MEA's demurrer below relied primarily on the *Singletary* decision, on appeal the MEA makes little attempt to argue the case was correctly decided.

issue determinations and orders as [they] deem necessary, *consistent with and pursuant to the policies of this chapter.*" (§ 3509, subd. (d), italics added.) *Singletary* appears to have assumed that this language required that the jurisdictional rule contained in section 3509.5, subdivision (b), applied to the ERB as well as to the PERB. In our view, this conclusion does not follow from the statutory language. As the DWP argues and the superior court suggested, as used in section 3509, subdivision (d), the word "policies" is substantive and requires that the ERB adhere to the guiding principles of the MMBA when enforcing the ERO. (See *County of Los Angeles, supra,* 56 Cal.4th at p. 917 [ERCOM must exercise its authority in a manner consistent with and pursuant to the policies of the MMBA as interpreted and administered by PERB; accordingly, the County's ordinance must be construed to avoid any conflict with the MMBA].) Black's Law Dictionary defines "policy" as, inter alia, "[t]he general principles by which a government is guided in its management of public affairs." (Black's Law Dict. (9th ed. 2009) p. 1278, col. 1.) In other words, "policies," as used in section 3509, subdivision (d), does not compel a conclusion that every procedural rule applicable to PERB must likewise apply to ERB. Given the absence of any clear indication the Legislature intended section 3509.5, subdivision (b)'s jurisdictional rule to apply to ERB, the reference in section 3509 to consistency with the policies of the chapter neither creates ambiguity nor compels the conclusion that section 3509.5, subdivision (b) applies to ERB decisions.

Nor do we think that our conclusion undercuts *Singletary*'s primary holding that the ERB has exclusive initial jurisdiction over unfair practices charges. As *Singletary* pointed out, when remedies are available before an administrative body – such as

28

the ERB here – a party generally must exhaust those remedies before seeking judicial relief. (*Singletary, supra,* 212 Cal.App.4th at p. 45.) Furthermore, the legislative history cited by *Singletary*, expressing the Legislature's intent to effectuate the broad policy of providing for enforcement by an administrative agency with expertise in labor relations, with the courts serving an appellate function, also supports the conclusion that the ERB has exclusive initial jurisdiction over alleged MMBA violations. (*Id.* at p. 42.) These points amply support *Singletary*'s conclusion that the ERB has exclusive initial jurisdiction over unfair practices charges involving the City and its employees. Further, the City's ERO provides that claims of unfair employee relations practices "shall be processed by the Board [the ERB] in accordance with its rules." (L.A. Admin. Code, §§ 4.860, subd. (c); 4.801.) Here, of course, the ERB did exercise initial jurisdiction over the MEA's unfair practice charge, and excluding ERB decisions from section 3509.5's reach does not conflict with the legislative intent that expert administrative bodies, rather than the courts, exercise initial jurisdiction over MMBA charges.

DISPOSITION

The judgment is reversed and the matter is remanded for further proceedings consistent with the opinions expressed herein.  Each party shall bear its own costs.

**CERTIFIED FOR PUBLICATION**


ALDRICH, J.


We concur:


EDMON, P. J.


STRATTON, J.*

---

*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.