Filed 5/11/26  Morataya v. Fortades CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| KERIN MORATAYA,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MARCO FORTADES,<br><br>    Defendant and Respondent. | B341752<br><br>(Los Angeles County<br>Super. Ct. No. 23STCV07923) |

APPEAL from an order of the Superior Court of Los Angeles County, Alison Mackenzie, Judge.  Reversed and remanded with directions.

Campbell & Farahani, Frances M. Campbell and Nima Farahani, for Plaintiff and Appellant.

Marco Fortades, in pro. per., for Defendant and Respondent.

————————————————

# INTRODUCTION

Appellant Kerin Morataya (Morataya), a disabled former law student, sued respondent Marco Fortades (Fortades), a volunteer professor, for disability discrimination under the Unruh Civil Rights Act (Civ. Code, §§ 51, 52). On the day set for trial, and after giving the parties one day each to brief the issue, the trial court dismissed the case on its own motion based on its determination that, as a matter of law, Fortades was not a "business establishment" subject to the Act. We reverse and remand with directions for the trial court to vacate the order of dismissal.

## FACTUAL AND PROCEDURAL BACKGROUND

A.      *The Parties and the Underlying Dispute*

Peoples College of Law was the business name of the Guild Law School, a nonprofit public benefit corporation and registered, unaccredited law school in Los Angeles. The school charged tuition of $5,000 per year and a $50 application fee. It was staffed primarily by volunteer faculty.

In 2021, Fortades, a licensed attorney, volunteered to teach torts at Peoples College. He had no prior teaching experience and no background litigating torts. He sought the position to obtain mandatory continuing legal education credits. After an interview by a committee that included the school's dean, Fortades was approved to teach.

Morataya enrolled as a first-year student at Peoples College for the 2021–2022 school year, and disclosed on her application that she was disabled. During her admissions

2

interview, she informed the admissions committee that she suffered from bipolar and anxiety disorders and would need to attend and take examinations in the videoconference classes with her video camera off because appearing on camera could trigger debilitating panic attacks. The school instructed her to seek accommodations from each of her professors.

Morataya requested and received the camera-off accommodation from all her professors, including Fortades. By the second quarter of the school year, however, the relationship between Fortades and Morataya had deteriorated. Fortades stated to another professor regarding Morataya that, "there is one issue I have and it's with a particular student. I do not want to teach her and she is making the class miserable for me with her rude and disrespectful comments." After receiving a D+ in second-quarter torts, she was placed on academic probation.

The day before the third-quarter torts final examination, Fortades notified his students by email that all cameras must be on during the exam and that grades would be docked 20 percent for noncompliance. This revoked the accommodation Fortades had previously granted Morataya. Despite intervention by the school's admissions chair, who told Morataya he would speak to Fortades and instruct him to allow her to take the exam with her camera off, Fortades declined to honor the accommodation. Morataya took the exam with her camera off. Fortades refused to submit a grade for Morataya, resulting in a zero on her transcript and academic disqualification.

B.  *The Lawsuit and Settlement with Peoples College*
In April 2023, Morataya sued Peoples College and Fortades for violating the Unruh Civil Rights Act. Fortades answered with

a general denial and asserted several affirmative defenses, including that the complaint did not state a claim against him.

Before the trial date, Morataya settled her claims against Peoples College.  Only the claim against Fortades remained.

C.    *The Trial Court's Sua Sponte Dismissal*

On September 16, 2024, the parties appeared for the final status conference and trial.  During the conference, the trial court raised, on its own initiative and after reviewing a use note to CACI Jury Instructions (CACI) No. 3060, the question of whether Fortades was a "business establishment" amenable to suit under the Unruh Civil Rights Act.  The court ordered "supplemental briefing" on this issue, limited each party to five pages, and it gave Fortades one day to file his brief and Morataya one day to respond.

As directed, both sides submitted their briefs.  Fortades argued he was not a business establishment because he was a volunteer.  In support, he cited federal cases interpreting the Americans with Disabilities Act, rather than the Unruh Civil Rights Act.  Morataya argued that employees and agents of business establishments may be individually liable under the Unruh Civil Rights Act and cited California authority in support.

On September 19, 2024, the first day of trial, the court stated:  "I am dismissing the Unruh Act claim against Mr. Fortades.  I told the jury room not to bring up the jurors.  We're not going forward on the Unruh Act claim against Mr. Fortades because that was all that was left on this case.  Okay?"  It further stated that:  "The factual record in this case is -- is [*sic*] spared.  Nothing was provided to me except the briefs.  I mean, I got the legal briefs from both of you -- thank you -- but as far as being

4

able to determine the issue about the business establishment, I was left with your -- your briefs." The court then explained it would decide the issue as a matter of law "based on facts -- that is, the facts that everyone agrees on."

The court stated the Unruh Civil Rights Act is to be construed broadly, but it concluded that an unpaid employee of a business is not subject to suit under the Act because such a person is not a business establishment. The court further stated (incorrectly) that, based on the plain language of Civil Code section 51, only the business entity, not an individual working for it, could be sued. The court then allowed counsel to respond.

Morataya's counsel offered to put her client on the stand and stated she was prepared to prove her case at trial.

Although the parties disputed whether Peoples College was a business establishment, the court did not ultimately resolve that question, instead concluding that it could not find Fortades "was acting in a business establishment" based on his role as a volunteer instructor. The court stated: "I think it's an interesting issue and . . . I have decided as a matter of law that Mr. Fortades doesn't fit within the plain language of the statute."

The court entered a signed order dismissing the case "without prejudice." Morataya timely appealed.

## DISCUSSION

A.    *The Appeal is From an Appealable Order*

We first address our jurisdiction. (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126 [appellate court must independently confirm jurisdiction over appeal].) "A reviewing court has jurisdiction over a direct appeal only when there is (1) an

appealable order or (2) an appealable judgment." (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696; accord, *Efron v. Kalmanovitz* (1960) 185 Cal.App.2d 149, 152.)

Here, the signed dismissal order disposes of all remaining claims against the only remaining defendant. An order of dismissal is an appealable "judgment" if it is in writing, signed by the court, and filed in the action. (Code Civ. Proc., § 581d; *City of Los Angeles v. City of Los Angeles Employment Relations Bd.* (2016) 7 Cal.App.5th 150, 157; *Roe v. Doe 1* (2023) 98 Cal.App.5th 965, 972.) Although the involuntary dismissal was "without prejudice," the order was a final adjudication on the merits between these parties and was appealable; the trial court concluded, as a matter of law, that Fortades could not be sued by Morataya under the Unruh Civil Rights Act. (*Topa Ins. Co. v. Fireman's Fund Ins. Companies* (1995) 39 Cal.App.4th 1331, 1336 [involuntary dismissal "without prejudice" was appealable because dismissal order represented final judicial determination of Topa's rights against Fireman's Fund]; see also *Price v. Slawter* (1959) 169 Cal.App.2d 448, 451 [a judgment's character "does not depend upon what it is entitled but what it does"].) Accordingly, the dismissal order is appealable.

B.      *Standard of Review*

The interpretation of the Unruh Civil Rights Act, including the scope of individual liability under Civil Code sections 51 and 52, presents a question of law subject to de novo review. (*Tansavatdi v. City of Rancho Palos Verdes* (2023) 14 Cal.5th 639, 652.) Whether the trial court's procedure for entering a dispositive pretrial ruling satisfied due process is a legal question we review de novo. (*Urshan v. Musicians' Credit Union* (2004)

6

120 Cal.App.4th 758, 764-765 (*Urshan*); *Ryan v. California Interscholastic Federation-San Diego Section* (2001) 94 Cal.App.4th 1048, 1069 (*Ryan*).)

C. *The Trial Court Applied an Incorrect Legal Framework, and Its Pretrial Resolution Procedure Did Not Provide Morataya With Adequate Due Process*

Morataya argues the court essentially entered summary judgment against her on the business establishment issue. Fortades argues the court was exercising its inherent powers to dismiss a legally insufficient claim. We conclude the trial court applied an incorrect legal framework and did not provide Morataya with adequate notice and an opportunity to be heard.

1. *The Trial Court Applied an Incorrect Legal Framework*

The trial court asked the parties to brief whether Fortades was a "business establishment" under the Unruh Civil Rights Act, apparently based on the directions for use for the relevant jury instruction.[1] The Unruh Civil Rights Act broadly prohibits discrimination "in all business establishments of every kind whatsoever." (Civ. Code, § 51, subd. (b).) And it imposes liability on "whoever" violates that prohibition. (Civ. Code, § 52,

---

[1] CACI No. 3060's Directions for Use state: "The judge may decide the issue of whether the defendant is a business establishment as a matter of law. (*Rotary Club of Duarte v. Bd. of Directors* (1986) 178 Cal.App.3d 1035, 1050 [(*Rotary Club*)].) Special interrogatories may be needed if there are factual issues. This element has been omitted from the instruction because it is unlikely to go to a jury."

subd. (a).) For liability to attach to Fortades, the question is not whether Fortades, as an individual defendant, is a business establishment, but rather whether discrimination occurred in a business establishment (Peoples College) and, if so, whether Fortades may be held liable as the person who committed the discriminatory act. Several California courts have held that employees and agents of business establishments may be individually liable under the Act for discriminatory conduct in the course of providing the business's services. (See, e.g., *North Coast Women's Care Medical Group, Inc. v. Superior Court* (2008) 44 Cal.4th 1145, 1154 [liability for violations of Act "extends beyond the business establishment itself to the business establishment's employees responsible for the discriminatory conduct"]; *Department of Fair Employment & Housing v. M&N Financing Corp.* (2021) 69 Cal.App.5th 434, 444 [same]; *Smith v. BP Lubricants USA Inc.* (2021) 64 Cal.App.5th 138, 151-152 [employee acting on behalf of business establishment during presentation "act[ed] as a 'business establishment' " and could be individually liable].)

Whether that principle extends to unpaid volunteers like Fortades is a question we need not decide. But the trial court's analysis did not account for this body of authority, and its determination that Fortades himself was not a business establishment did not answer the question of whether Fortades could be held liable under the Act if Peoples College were a business establishment. As explained below in Part E, that question would turn on facts regarding the scope of Fortades's duties and his responsibilities at Peoples College, evidence which Morataya did not have a sufficient opportunity to present.

8

2. *The Trial Court Did Not Provide Sufficient Notice and an Opportunity To Be Heard on a Dispositive Issue*

The trial court adjudicated Morataya's action on the first day of trial on its own motion, on an issue it raised sua sponte, without providing Morataya notice of the dispositive nature of the ruling or a meaningful opportunity to respond. The California Supreme Court addressed the consequences of sua sponte dispositive adjudication in *Dvorin v. Appellate Dep't of Superior Court* (1975) 15 Cal.3d 648 (*Dvorin*). There, the court held that ordering summary judgment for a party who had not moved for it "denies the opposite party opportunity to allege additional facts justifying trial of factual issues" and that "[d]epriving him of his right to a fair trial, the procedure falls outside the curative provisions of California Constitution, article VI, section 13." (*Dvorin*, at p. 651.) *Dvorin* arose in the context of summary judgment, and we do not conclude that every pretrial resolution of a legal issue must follow the procedures of Code of Civil Procedure section 437c (as Morataya argues). *Dvorin*'s animating principle, however, is broader than its procedural setting: when a court enters a dispositive ruling that terminates an action, it must do so through a procedure that provides the affected party meaningful notice of the ruling's dispositive nature and an adequate opportunity to respond, including, where the legal question has factual predicates, an opportunity to develop the evidentiary record.

Here, the court ordered supplemental briefing limited to five pages per side, and it gave Fortades one day to file his brief and Morataya one day to respond. And it appears no evidentiary submissions were requested or could be accommodated given the

9

five-page limitation. In *Urshan, supra,* 120 Cal.App.4th 758, a previous panel of this division addressed an analogous situation. There, the trial court invited a summary judgment motion by the defendant, and it shortened the statutory time for hearing the motion, providing less than 10 days' notice, "far short of the . . . minimum 28 days," and "[e]ach side had less than two days to prepare a motion or opposition." (*Urshan*, at p. 765.) *Urshan* held: "Not only was this shortened time period violative of the statute, notice and opportunity to prepare to be heard was so minimal the procedure was tantamount to a denial of due process." (*Ibid.*) The procedure here was more deficient than the one utilized in *Urshan* because Morataya only had one day to respond to an issue that the court subsequently concluded disposed of her case.

After the briefing was submitted and the parties appeared for the hearing, the transcript reflects the court announced its intent to dismiss the case before hearing argument on the issue. The court did not frame its ruling as a tentative ruling that was subject to change based on the parties' argument, and its announcement to the parties that "I am dismissing the Unruh Act claim against Mr. Fortades," that it "told the jury room not to bring up the jurors," and that "[w]e're not going forward on the Unruh Act claim against Mr. Fortades" appeared to leave no doubt the court had resolved the issue. Although the court then invited counsel to "argue why you disagree," the court's earlier statements suggested that argument from Morataya would not change the result. "The primary purpose of procedural due process is to provide affected parties with the right to be heard at a meaningful time and in a meaningful manner." (*Ryan, supra*, 94 Cal.App.4th at p. 1072.) A hearing at which the outcome has

10

already been announced as a foregone conclusion does not satisfy that requirement.

Fortades argues the trial court exercised its "inherent authority to dismiss cases that are 'clearly shown to be sham and without merit,' " quoting *McKenna v. Elliott & Horne Co.* (1953) 118 Cal.App.2d 551. But *McKenna* involved a dismissal after a noticed motion filed by a party (not a sua sponte dismissal based on a briefing schedule giving the parties one day each to prepare their papers). And even if Morataya's lawsuit against Fortades is ultimately unsuccessful, Fortades has not demonstrated it was a "sham" or involved "vexatious litigation." (*Id.* at p. 555.) In all events, courts possess inherent authority to manage their dockets and to identify legal issues that may be resolved pretrial. As *Dvorin* and *Urshan* demonstrate, however, a court's inherent authority must be exercised in a way that gives an affected party notice and a meaningful opportunity to respond.

D.     *Morataya Did Not Forfeit Her Arguments*

Fortades argues that Morataya's counsel forfeited the right to challenge the court's procedure by submitting the requested brief and arguing the merits. This argument is unpersuasive. Forfeiture is the failure to object or to invoke a right. (*North American Title Co. v. Superior Court* (2024) 17 Cal.5th 155, 178.) But compliance with a court order to brief an issue does not forfeit the right to challenge the adequacy of the process by which the court uses that briefing to terminate the action. (See *Urshan*, *supra*, 120 Cal.App.4th at p. 768 [counsel's "forced participation in the proceedings . . . is not a valid substitute for knowing consent to shortening the statutorily mandated notice period"].) And Morataya's counsel was not presented with a procedural

11

choice she could meaningfully accept or reject; she was presented with an order to brief an issue, which she complied with while continuing to assert her client's right to trial. Morataya's forced participation in the procedure utilized by the court did not forfeit her right to challenge it.

E.     *The Error Prejudiced Morataya Because She Had No Opportunity to Develop the Record*

Morataya argues the court's error was structural, mandating automatic reversal. Fortades contends any error was harmless because the legal question would be resolved the same way on remand. We need not decide whether the error was structural because we conclude the error was prejudicial. Morataya had no meaningful opportunity to develop the record, and we cannot say the result would be the same on remand.

When examining the Unruh Civil Rights Act, our Supreme Court has cautioned that the "reach of section 51 cannot be determined invariably by reference to the apparent 'plain meaning' of the term 'business establishment.' " (*Warfield v. Peninsula Golf & Country Club* (1995) 10 Cal.4th 594, 616.) And even in the case cited in CACI No. 3060's Directions for Use, *Rotary Club*, *supra*, 178 Cal.App.3d at pages 1050 through 1058, the appellate court's legal determination that Rotary International was a business establishment rested on a factual analysis spanning seven pages. This suggests the "business establishment" determination under the Act is a legal conclusion that depends on facts about the function and activities of the organization and the role of the individual defendant within it.

Here, the trial court appeared to assume that Peoples College was a business establishment, so it focused on Fortades's

12

volunteer status. But to determine whether Fortades could be held liable under the Act necessarily turned on the nature of Fortades's status and whether, even though he was a volunteer, he could be deemed an agent of the school who could be individually liable for discrimination committed in the course of providing the school's services. Morataya had no opportunity to develop the factual record on these issues, including Fortades's role and authority, the scope of his duties, and the nature of the relationship between the school and its volunteer faculty. Presumably, these facts would have been presented at trial. We conclude Morataya was prejudiced because the record does not establish that the same result would be reached on remand with an adequately developed factual record.

F.      *We Do Not Reach the Substantive Unruh Civil Rights Act Questions*

The parties have extensively briefed the "business establishment" question and the issue of volunteer liability. These are significant questions that may involve novel applications of the Unruh Civil Rights Act. Given the absence of a developed factual record, we decline to reach these questions, which are better addressed in the first instance by the trial court on proper proceedings with a developed factual record.

## DISPOSITION

The order dismissing the action against Fortades is reversed, and the matter is remanded to the trial court with directions to vacate its order of dismissal. Morataya may recover her costs on appeal.

13

To the extent Fortades or the court believe the issue of Fortades's status as an agent or volunteer is amenable to pretrial resolution, such issues shall be addressed through a noticed motion that provides the parties with adequate notice and a meaningful opportunity to be heard, including evidentiary submissions.  Alternatively, the issue may be resolved at trial based on the evidence presented.

MARTINEZ, P. J.

We concur:

STONE, J.                         GIZA, J.<sup>*</sup>

---

<sup>*</sup>    Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.